# MARY L. APPLEGATE Respondent, v. TRAVELERS INSURANCE COMPANY OF HARTFORD CONN., Appellant.

Reargued and Submitted October 24, 1910. Opinion Filed November 10, 1910.

1. **JURISDICTION: Court of Appeals: Federal Constitution Invoked.** Under section 12, article 6, Constitution of Missouri, and section 5 of the Amendment thereto of 1884, giving the Supreme Court jurisdiction in cases involving the construction of the state or federal Constitution, the Court of Appeals is without jurisdiction of a cause where a question open for consideration involving the construction of the federal Constitution is properly presented by the record.

2. ———: ———:. **Constitutional Question: Effect of Previous Adjudication.** The Court of Appeals has jurisdiction to determine a case in which a constitutional question is raised, when such question has been settled by the adjudications of the Supreme Court.

3. ———: ———: ———: ———: **Life Insurance: Constitutionality of Section 6945.** It having been determined by both the federal and state Supreme Courts that section 6945, Revised Statutes 1909, which provides that suicide shall be no defense to an action on a life insurance policy, is not violative of the Furteenth Amendment to the federal Constitution, that question is no longer an open one in this state, so that the Court of Appeals has jurisdiction of an appeal, although that question was raised by appellant in the court below.

4. ———: ———: ———: **Arising on Judgment of Lower Court: Review.** Whether a constitutional question is presented for the determination of the appellate court, when such question arises for the first time on the decision or judgment of the lower court, is not very clear, under the decisions of the Supreme Court of this state, but it is settled in the affirmative by the decisions of the federal Supreme Court.

5. **ACTION: Defense: What is.** Whatever tends to diminish plaintiff's cause of action, or to defeat a recovery in whole or in part, amounts in law to a defense.

6. **LIFE INSURANCE: Suicide: Statute.** Under section 6945, Revised Statutes 1909, declaring that suicide shall be no defense to an action on a life insurance policy, the suicide of insured

does not give a cause of action, but a cause of action arises on the policy, as interpreted by the statute, by reason of the death of insured, this interpretation being, that when the death of insured occurs from suicide, the beneficiary shall recover the full amount of the insurance.

7. ———: ———: ———: **Applies to Accident Policy.** Section 6945, Revised Statutes 1909, declaring that suicide shall be no defense to an action on a life insurance policy, applies to a suit on an accident policy insuring against death from bodily injuries effected through external, violent and accidental means, within ninety days from the date of the injuries.

8. ———: ———: ———: ———: **Facts Stated.** An accident insurance policy provided that insurer would pay the beneficiary a stipulated sum in the event of the death of insured, effected through external, violent and accidental means, within ninety days from the date of the injuries, and that in the event of the death of insured, caused by poison, insurer would pay only one-tenth of the amount otherwise payable. Insured committed suicide by taking poison. In an action to recover the full amount of the insurance, defendant pleaded it was liable for one-tenth of the amount only, for the reason its liability was so limited in the policy, in the event of death by poison. *Held,* that under section 6945, Revised Statutes 1909, insurer was liable for the full amount sued for, since the policy, as interpreted by the statute, provides that when death occurs from suicide, whether accomplished by poison or otherwise, the beneficiary shall recover the full amount insured for.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench,* Judge.

AFFIRMED.

*Watts, Williams & Dines* and *Wm. R. Gentry* for appellant.

(1) The policy sued on expressly provides that, in the event of death by poison, the company shall pay but one-tenth of the amount otherwise payable. It was entirely competent for the insured and insurer to contract for an indemnity of one amount for death or injuries resulting from certain causes, and for a different amount where death or injury is due to other causes, or the accident happens under specified circumstances,

or at designated places. McAndiless v. Insurance Co., 45 Mo. App. 578; Mossop v. Continental Casualty Co., 118 S. W. 680; Shader v. Railroad, 66 N. Y. 441; Standard Co. v. Jones, 94 Ala. 434; Campbell v. Insurance Co., 60 S. W. 492; 1 Cyc. 257; 4 Cooley's Briefs, 3175. (2) Section 7896 of the statutes has no application. It provides that suicide shall not constitute a defense to a suit upon a policy of insurance on life—not that it shall authorize a recovery where death by suicide is caused by means, under circumstances, at a place, or in a manner not covered by the policy. The statute does not give a cause of action on account of the suicide. It only provides that where, under the terms of the contract, a liability would exist if death had occurred in the same manner and from the same causes if there had been no suicide, then suicide shall constitute no defense. R. S. 1899, sec. 7896. (3) The policy in this cause provides an indemnity of a specified amount in case of death by poison. This is not confined by the contract to poison taken with suicidal intent. It includes all cases where death results from poison and cannot be said to have been inserted as a mere subterfuge to avoid the statute. McGlother v. Insurance Co., 89 Fed. 685, 32 C. C. A. 318; Early v. Insurance Co., 113 Mich. 58; Hill v. Insurance Co., 22 Hun 187; 1 Cyc. 264; Pollock v. Insurance Co., 48 Am. Rep. 204. This is also apparent from the fact that an exception of liability *in toto,* in case of suicide, is inserted in another clause of the policy. It also appears that the contract provides a different indemnity for various accidents, which is entirely reasonable, as the insured might be exposed more frequently to accidents of one kind than another; or the insurer might be willing to accept the risk for one kind, at a specified premium, and only a limited risk for another class for the same premium. (4) The statute, as construed by the trial court, is vio-

lative of the Fourteenth Amendment of the Federal Constitution. The right to contract is a property right protected by this amendment. The insurer and the insured made a contract fixing a specific amount to be paid in case death should be caused by poison. Presumably the premiums were made with a view to that liability. The Legislature may prohibit certain contracts, but there must be something in the nature of the contract itself to justify the exercise of such power. It may not be arbitrarily used. State v. Julow, 129 Mo. 163.

*Charles H. Brock* for respondent.

(1) The fact that the policy contains a clause providing for one-tenth payment of the full face value of the policy, does not save it from being in violation of the suicide statute of this state, if construed so as to apply to this case. Kellar v. Insurance Co., 58 Mo. App. 557; Whitfield v. Life Insurance Co., 205 U. S. 489. (2) If the poison clause of the Applegate policy can possibly be construed to apply to suicidal death by taking poison, said construction or meaning of the clause would be directly opposed and contrary to the suicide statute of the State of Missouri which has been held to apply to accident insurance companies and their policies. R. S. 1899, sec. 7896, ch. 119; Logan v. Fid. and Cas. Co., 146 Mo. 114; Berry v. Knights Templar, etc., 46 Fed. Rep. 439; s. c. upon appeal, 50 Fed. Rep. 511; Elliott v. Safety Fund Life Association, 76 Mo. App. 562; Jarman v. Knights Templar Association, 95 Fed. Rep. 70, 104 Fed. Rep. 638; 187 U. S. 199. (3) The statute (section 7896, R. S. 1899) is mandatory and obligatory, and it cannot be waived or abrogated by any form of contract or by any device whatever. Kellar v. Ins. Co., 58 Mo. App. 557; Berry v. Knights Templar, 46 Fed. Rep. 439; Whitfield v. Life Ins. Co., 205 U. S. 489. (4) To say that the poison clause in the policy

applies to a case of suicide by the use of poison would, in effect, be making the suicide of the insured a defense. Whatever tends to diminish the plaintiff's cause of action in a case of suicidal death or to defeat a recovery, in whole or in part, amounts in law to a defense. Whitfield v. Life Ins. Co., 205 U. S. 489. (5) The claim in a motion for a new trial that section 7896, R. S. of Missouri as construed by the court, is violative of the Fourteenth Amendment of the Constitution of the United States, is but another way of stating that the court's construction of the statute is violative of the Federal Constitution, and this does not involve in the record a constitutional question. Petring v. Current River L. & C. Co., 111 Mo. App. 373; Hilgert v. Asphalt Pav. Co., 173 Mo. 319; Schwyhart v. Barrett, 122 S. W. 1049; Sublette v. Railroad, 198 Mo. 190; Vaughn v. Railroad, 145 Mo. 57; White L. S. Com. Co. v. Railroad, 157 Mo. 518; Carey v. Schultz, 221 Mo. 133.

STATEMENT.—The plaintiff in this cause, respondent here, brought her action against the defendant, appellant here, stating as a cause of action that she was the wife of one Oliver H. Applegate, and that the defendant is a corporation created, organized and existing under and by virtue of the laws of the State of Connecticut, but engaged in the business of selling contracts in life insurance in the State of Missouri and having its office in the city of St. Louis. That in consideration of the payment to it by Oliver H. Applegate of fifteen dollars, defendant executed and delivered its policy of insurance in writing, whereby it insured the life of Applegate in the sum of three thousand dollars, for the benefit of his wife, plaintiff, for a term of twelve months from the 23d of March, 1904, with the privilege of renewing the policy from year to year on the payment by Applegate at each renewal of the sum of fifteen dollars; that according to the terms of the policy of insurance, defendant agreed to pay plaintiff, in event of the death

of Oliver H. Applegate, four hundred and fifty dollars in addition to the principal sum of three thousand dollars, provided the policy of insurance was renewed for three consecutive years after the first period of twelve months; that Oliver H. Applegate renewed the policy for a period of three years by the payment to the defendant of the sum of fifteen dollars for each renewal period of one year, as aforesaid. It is further averred in the petition that the defendant, through its policy, stipulated and agreed with Oliver H. Applegate, hereafter called the insured, that in event of the death of the insured from bodily injuries effected through external, violent, and accidental means, within ninety days from the date of the injuries, it would pay to the plaintiff the sum of $3450, provided the death occurred during the third renewal period of the policy of insurance, and provided further that the policy was in full force at the time of the death of the insured. The petition further avers that the policy provided that in the event of the death of the insured, loss of limb or sight, or disability caused by gas, vapor or poison, the company shall pay but one-tenth of the amount otherwise payable for bodily injuries to the insured, anything to the contrary in said policy notwithstanding. It is further averred that the insured died on the 18th of November, 1907, at St. Louis, "by suicide committed by said Oliver H. Applegate by drinking a liquid poison known as carbolic acid;" that up to the time of his death all the premiums accrued and due upon the policy had been duly paid and the insured had complied with its conditions and provisions. Notice to the company and proof of death is averred, and it is averred that the defendant had offered to pay plaintiff one-tenth part only of the amount, but had declined and refused to pay her the remaining nine-tenths part of the amount claimed to be due on the policy, to-wit, $3105; that no part of the full amount of $3450 had been paid. For this amount, with interest and costs, judgment is prayed. The policy sued on was,

as averred in the petition, filed with it and marked Exhibit "A."

In the answer the defendant admits that plaintiff was the wife of Applegate; that it (defendant) is a corporation, organized under the laws of Connecticut; that it issued the policy sued on and that the policy filed as Exhibit "A" is the one referred to, "but the defendant expressly denies that it ever issued to said Oliver H. Applegate any life insurance policy." It further admits that Applegate died in the city in St. Louis, on the day alleged, from the effects of a poison known as carbolic acid, which he drank on that date. Admits that proofs had been duly furnished by plaintiff of the death of Applegate, as required by the policy. Admits "that it was provided in said policy of insurance above referred to in this answer, that in the event of the death of the said Oliver H. Applegate, loss of limb or sight, or disability caused by gas, vapor or poison, the defendant should pay but one-tenth of the amount otherwise payable under the terms of the policy; anything to the contrary in said policy notwithstanding." It is then averred "that under the terms of the policy if the death of the said Oliver H. Applegate had resulted wholly from external, accidental and violent means other than the inhaling of gas or vapor or taking of poison on November 18, 1907, this defendant would have been liable to the plaintiff for the sum of $3450, and this defendant says that by said clause above referred to, it was expressly provided that if the death of the insured . . . was caused by poison the limit of this defendant's liability under said policy should be one-tenth of the principal sum thereof; that is to say the limit of its liability should be $345. This defendant therefore says that inasmuch as the death of the deceased, Oliver H. Applegate, was caused by carbolic acid, which is a poison, this defendant at the date of the death of said Oliver H. Applegate became liable to the plaintiff in the sum of $345 only." It then avers

that it tenders and brings into court this sum with interest on it from the date of the death of the insured and tenders the sum to plaintiff, "in full payment and settlement of defendant's liability under the terms of said policy of insurance, as expressly agreed therein," and offers to allow judgment to be entered in favor of plaintiff against the defendant for that sum, $354.77, with costs of suit to the date of filing the answer. All other allegations of the plaintiff's petition are denied.

It appears by the abstract of the record that on the day of filing this answer, defendant by leave of court paid into court the above sum and had paid all costs accrued to that date.

A reply was filed admitting that the insured died as the result of taking carbolic acid, a poison; that it was taken by the insured with the purpose on his part of committing suicide and that the act of taking it was a suicidal act which resulted in the death of the insured. It is further averred that the policy of insurance, Exhibit "A," is a policy of insurance on the life of Oliver H. Applegate and that by reason of the aforesaid facts plaintiff is entitled to judgment against defendant for the full amount as prayed for in the petition. All other allegations in the answer are denied, and plaintiff declining to accept the sum tendered and refusing to accept judgment in her favor for the amount tendered and costs, again prays for judgment for the full amount sued for, namely $3450 and interest and costs.

The case was tried on an agreed statement of facts before the court, a jury being waived. The agreed statement of facts is embodied in the bill of exceptions and set out in the abstract. The contract of insurance or policy is embodied and set out in full. It is dated March 23, 1904. Summarizing it, it sets out, among other matters, that in consideration of the warranties thereinafter set forth and of fifteen dollars, the defendant company insured Oliver H. Applegate for the term of twelve months from March 23, 1904, "against bodily in-

juries effected through external, violent, and accidental means, as specified in the schedule below," the principal sum of the first year being $3000, with 5 per cent increase annually for ten years, amounting to $4500, each consecutive full year's renewal of the policy adding 5 per cent to the principal sum of the first year until such additions shall amount to fifty per cent and thenceforth, so long as the policy is maintained in force, the insurance would be for the original sum plus the accumulations theretofore granted. The schedule of indemnities followed. That designated as "Part A," is for loss of life; of both hands by severance at or above the wrist; of both feet by severance at or above the ankle; of one hand and one foot at those places; of entire sight of both eyes if irrecoverably lost; it being set out that in any of these events the principal sum is payable. For loss of either hand by severance at or above the wrist; of either foot by severance at or above the ankle; of entire sight of one eye if irrecoverably lost, one-third that sum, and that, "In event of death the principal sum insured shall be paid to Mary L. Applegate (plaintiff), wife (the beneficiary), if surviving, otherwise to the executors, administrators, or assigns of the insured." Then follows what is designated as "Part B," and headed "Weekly Indemnity," providing for the payment of fifteen dollars a week for total loss of time and six dollars for partial loss of time. "Part C," provides that the amounts to be paid for claims under "Part A and B" shall be double the sum specified in this schedule, if such injuries are sustained while riding as a passenger and being actually in or upon any railway passenger car, using steam, cable or electricity as a motive power or in a passenger elevator or while traveling as a passenger on board a steam vessel or any regular line for transportation of passengers, or caused by the burning of a building while the insured is therein. The above matter appears on the front or first page of the

policy. On the back of this first page, under the heading "Special Payments," appears this as "Part D:"

"In the event of death caused by sunstroke or freezing, or caused by bodily injuries of which there exists no external visible contusion or wound upon the body sufficient to cause death (accidental drowning only excepted), or in event of death or disability caused by hernia produced by external and accidental violence, the company shall pay but one-half of the amount otherwise payable hereunder for bodily injuries covered hereby, anything to the contrary in this policy notwithstanding."

Under the sub-head "Part E" is this:

"In the event of death, loss of limb or sight, or disability caused by gas, vapor, or poison, or by injuries intentionally inflicted upon the insured by any other person, sane or insane (except assaults committed for purposes of burglary or robbery), the company shall pay but one-tenth of the amount otherwise payable for bodily injuries covered hereby, anything to the contrary in this policy notwithstanding."

"Part F," after stipulating for payment for necessary surgical operations in certain events, contains nine provisos. The first, second and third are immaterial in this case. The fourth sets out that the insurance shall not cover, among other happenings, "disappearance, or suicide sane or insane, or injuries of which there is no visible mark on the body, . . . nor shall it cover accident, injury, death, loss of limb or sight, or disability, resulting . . . wholly or partly, directly or indirectly . . . from disease in any form, . . . self-inflicted injuries, war or riot or voluntary overexertion or from voluntary exposure to unnecessary danger." The fifth, sixth, seventh and eighth are not material to this case. The ninth clause is printed on the third page, and sets out "that all the warranties made by the insured upon acceptance are true," following which are specifications as to age, occupation, hab-

its, earnings, etc. The fourth page or back sets out the benefits to the beneficiary, a table of income, and is endorsed "Accident Policy on Life of Oliver H. Applegate," with name of defendant, dates, etc. These are all the matters appearing on or in the policy deemed necessary to be set out for an understanding of the points here involved. The agreed statement further admits that all premiums had been paid on the policy and all its terms and conditions complied with by the insured, up to the time of his death and that the policy was in full force and effect on that date, to-wit, the 18th of November, 1907, and that on the 18th of November, 1907, Oliver H. Applegate committed suicide in the city of St. Louis, State of Missouri, by drinking a liquid poison known as carbolic acid and that death was caused by the poison; that due notice of his death had been given by plaintiff to the defendant and that she had furnished proper proofs of death, all as required by the terms and conditions of the policy.

No declarations of law appear to have been asked or given.

The court found in favor of plaintiff and against defendant for $3632.85, that being the principal sum of $3450, with interest amounting to $182.85, for the period between commencing the action and the date of the judgment. Motion for new trial was duly filed, in which the usual assignments of error are made, while the third ground assigned is that "the finding and judgment of the court in the case is in violation of the Fourteenth Amendment of the Constitution of the United States of America, in that it abridges the privileges and rights of the defendant in this case and denies to it the equal protection of the laws by abridging its right to contract." The fourth ground of the motion for new trial is because section 7896, "as construed by this court in its finding and judgment in this case, is unconstitutional in that it is in violation of the Fourteenth Amendment of the Constitution of the United States of Amer-

ica because it abridges the rights of an insured and an insurance company to make a contract concerning life insurance and accident insurance, and denies to insurance companies the equal protection of the laws." This motion was overruled, exception being duly saved. Defendant thereupon prayed for an appeal, the affidavit for appeal, made by the attorney and agent for defendant, setting out that a constitutional question is involved in this case and therefore defendant prayed the court, that in granting an appeal, it would grant it to the Supreme Court of the state. The affidavit otherwise is in the usual form. The trial court refused to grant an appeal to the Supreme Court and made an order granting it to the St. Louis Court of Appeals, to which action of the court in refusing to grant its appeal to the Supreme Court instead of to the St. Louis Court of Appeals, as appears by the bill of exceptions set out in the abstract, defendant, by counsel, then and there duly excepted. The case is here on that order, defendant appealing.

REYNOLDS, P. J. (after stating the facts).—The brief submitted to us along with the argument in this case by the learned counsel for the appellant, while containing no formal assignments of error, makes four propositions: First, that it was entirely competent for the insured and insurer to contract for an indemnity of one amount for death or injuries resulting from certain causes and for a different amount where death or injury is due to other causes, or the accident happens under specified circumstances or at designated places. Second, that section 7896, of the Statutes of 1899, now section 6945, Revised Statutes 1909, has no application, it being claimed that that section provides that suicide shall not constitute a defense to a suit on a policy of insurance on life, not that it shall authorize a recovery where death by suicide is caused by means, under circumstances, at a place, or in a manner not covered by

the policy; that the statute does not give a cause of action on account of the suicide, but only provides that where under the terms of the contract, the liability would exist if death had occurred in the same manner and from the same causes, if there had been no suicide, then suicide shall constitute no defense. Third, that the policy in this cause provides an indemnity of a specified amount in case of death by poison and this provision cannot be said to have been inserted as a mere subterfuge to avoid the statute, it being claimed that this is also apparent from the fact that an exception of liability *in toto* in case of suicide is inserted in another clause of the policy, and that it also appears that the contract provides a different indemnity for various accidents which is entirely reasonable as the insured might be exposed more frequently to accidents of one kind than another, or the insurer might be willing to accept the risk for one kind at a specified premium and only a limited risk for another class for the same premium.

The fourth point, to quote the language of counsel, is that "the statute, as construed by the trial court, is violative of the 14th amendment to the Federal Constitution. The right to contract is a property right protected by this amendment. The insurer and the insured made a contract fixing a specific amount to be paid in case death should be caused by poison. Presumably the premiums were made with a view to that liability. The Legislature may prohibit certain contracts, but there must be something in the nature of the contract itself to justify the exercise of such power. It may not be arbitrarily used."

The printed argument submitted is divided into two paragraphs or heads, the first dealing with the three points above specified and the second being based on the fourth. In point of fact, the whole argument goes to the validity of the contract, the right of parties to contract, a right claimed to be under the protection of

the Constitution of the United States, the corollary following, that the judgment of the trial court has taken away or abridged this right, hence a construction of the Constitution of the United States is involved, as it is claimed. The case has been orally argued twice before this court, the first time when Judge Goode was a member, the second time before the court as now constituted.

Our right to determine this case on appeal is involved in the fourth point of counsel. It is proper to say that a motion to transfer the case to the Supreme Court was heretofore filed in this cause, based on the ground of want of jurisdiction of this court over the appeal. The point was very fully briefed by the learned counsel for appellant as well as for respondent, and with the concurrence of all the members of the court as then constituted, that motion was overruled, without, however, filing any opinion and without stating any reasons which had led us to that conclusion. As the point is again before us, both by brief and on the record, we feel bound to consider it. If there is a question open for consideration, involving the construction of the Constitution of the United States, and that question has been properly preserved by the record, not only is the case outside of our jurisdiction, but, if we determine the case adversely to the appellant, its right to have it heard before the Supreme Court of the United States on writ of error sued out to this court, is clear. [Wabash R. R. Co. v. Pearce, 192 U. S. 179.] While in that case the Supreme Court of the United States called attention to the fact that its jurisdiction over final judgments of the state courts is not identical with, but is more unlimited than is that of our state Supreme Court, referring to section 709, Revised Statutes United States, the right of review granted to our state Supreme Court by the Constitution is, so far as involved in the case at bar, as broad as is that of the Federal Court, our Constitution giving our Supreme Court sole appellate

jurisdiction, among other cases named, "in cases involving the construction of the Constitution of the United States or of this state," only lodging appellate jurisdiction, however, "in cases where the *validity* of a treaty or statute of or authority exercised under the United States is drawn in question" (Const., sec. 12, art. 6; sec. 5, Amendment of 1884 to Constitution), while the Supreme Court of the United States has jurisdiction in cases involving the *construction* of a law, treaty, etc., of the United States. [Tennessee v. Davis, 100 U. S. 257.] This is undoubtedly the difference referred to in Wabash R. R. Co. v. Pearce, supra.

Our Supreme Court, in Logan v. Field, 192 Mo. 54, l. c. 66, 90 S. W. 127, held that a constitutional question is properly raised, when first set up by the motion for a new trial. [See, also, Saxton National Bank v. Bennett, 138 Mo. 494, l. c. 500, 40 S. W. 97; City of Independence v. Cleveland, 167 Mo. 384, 67 S. W. 216.]

Whether an appeal lies to the Supreme Court of our state from a construction of a statute by the trial court, when it is claimed that construction brings the statute in conflict with the Constitution of this state or that of the United States, and hence involves a construction of either Constitution, is not very clear.

In State ex rel. Smith v. Smith et al., 152 Mo. 444, 54 S. W. 218, which was an application for mandamus requiring the Kansas City Court of Appeals to transfer a cause to the Supreme Court, Judge VALLIANT, speaking for the Supreme Court in Banc, after saying that the question involved in the case when pending in the Kansas City Court of Appeals was, which law is to govern, the Act of the Legislature of 1874, or the Kansas City Charter of 1889, and that the Kansas City Court of Appeals had decided that the Charter was adopted pursuant to the provisions of the Constitution authorizing cities of a certain population to frame a charter for its own government, consistent with and

subject to the Constitution and laws of this state, said (l. c. 448) : "All of which is the interpretation which that learned court places on the provision of the Constitution above quoted, and through that interpretation, and reasoning along that line, it reached the conclusion that as between the Charter provisions in question and the Act of 1874, the latter must prevail. . . . Undoubtedly there is involved in this case a construction of the Constitution, and as this is decisive of the case there is no necessity for considering the other points." The peremptory writ, requiring the Kansas City Court of Appeals to send the case to the Supreme Court was accordingly awarded. This appears to be a distinct decision that when the constitutional question arises on the decision or judgment of the court, appeal lies to the Supreme Court.

It is true that our Supreme Court, in Sublette v. St. L., I. M. & S. R. Co., 198 Mo. 190, 95 S. W. 430, held (l. c. 192) that "the Courts of Appeal have as much right to construe statutes as has this court, if construction of such is demanded in the course of decision of cases coming properly within their jurisdiction," and that in such cases, an appeal does not lie to the Supreme Court.

In Schwyhart v. Barrett, 223 Mo. 497, l. c. 500, 122 S. W. 1049, and again in Chastain v. Railroad, 226 Mo. 94, l. c. 97, Judge VALLIANT delivering the opinion of the Court in Banc in the former, has, however, very clearly drawn the distinction between the construction of an Act of Congress and the determination of its validity, holding that the Supreme Court is vested with appellate jurisdiction only in cases in which is involved the validity of the act, not its construction. In none of these cases, however, is the case of State ex rel. Smith v. Smith et al., supra, referred to or cited by the court, so that while there are expressions in the Sublette case and in the Schwyhart case, as well as in the cases of Vaughn v. Wabash R. R. Co., 145 Mo. 57, 46 S. W. 952;

Hulett v. Railroad, 145 Mo. 35, 46 S. W. 951; Hilgert v. Barber Asphalt Paving Co., 173 Mo. 547, 73 S. W. 475, and perhaps in others, that seem to hold contrary to what is said in State ex rel. Smith v. Smith et al., it does not appear that this latter case has been overruled; it is cited approvingly in Lohmeyer v. Cordage Co., 214 Mo. 685, 113 S. W. 1108, and Sheets v. Ins. Co., 226 Mo. 613, and recognized as stating a correct rule in Woolley et al. v. Means et al., 226 Mo. 41.

Whatever uncertainty or doubt may arise as to the true position of our own Supreme Court on this matter, the ruling of the Supreme Court of the United States has uniformly been to the effect that a case arises under the Constitution of the United States, and hence within the jurisdiction of that court, not merely where a party comes into court to demand something conferred upon him by the Constitution and laws of the United States or a treaty, or authority exercised under the United States, but whenever its correct decision as to the right, privileges or defense of a party, in whole or in part, depends upon the construction of either; that violation or disregard of the constitutional provisions, where made by the judicial tribunals of a state, may be, and generally will be, after the trial has commenced; that it is during or after the trial, that denials of a defendant's right by judicial tribunals occur and not often until then; nor can the defendant know until then that the equal protection of the laws will not be extended to him: certainly, until then, he cannot affirm that it is denied, or that he cannot enforce it in the judicial tribunals of the state. [See Tennessee v. Davis, 100 U. S. 257; Virginia v. Rives, 100 U. S. 313; Ex parte Virginia, 100 U. S. 339; Neal v. Delaware, 103 U. S. 370; Bush v. Kentucky, 107 U. S. 110; Yick Wo v. Hopkins, Sheriff, 118 U. S. 356.]

The weight of authority, certainly that of the Supreme Court of the United States, seems to be in favor of the rule that a claim to the protection of the Con-

stitution of the state or the United States can be made, and is not made too late, when the right or privilege claimed is thought to be denied by the judgment of the court, and that the right to invoke the protection of the Constitution arises and can be asserted, if properly made, as against the decision which is claimed to have invaded the right.

But it is not necessary for us to undertake to reconcile the decisions on this point in the case at bar, as, in our judgment, another proposition brings this case clearly within our appellate jurisdiction.

In the case of Meng v. Railroad, 183 Mo. 68, 81 S. W. 907, Judge MARSHALL, speaking for Division No. 1, Judges BRACE and VALLIANT concurring in the result only, held that the fact that the Supreme Court, by a former decision in one case had upheld the constitutionality of a verdict by nine jurors in a civil case, did not eliminate that constitutional question from another case, when it was properly raised. This opinion was delivered in the Meng case after the same division of the court, in the case of Lee v. Jones, 181 Mo. 291, 79 S. W. 927, Judge VALLIANT delivering the opinion, Judges BRACE and ROBINSON concurring *in toto* and Judge MARSHALL concurring in the result, had determined that the Supreme Court, having decided that under our Constitution three-fourths of the jurors in a civil suit in a court of record may render a valid verdict, therefore "that is no longer a constitutional question in this state." In the later cases of State v. Campbell, 214 Mo. 362, 113 S. W. 1081, and Lohmeyer v. Cordage Co., supra, l. c. 688, involving the Local Option Law, it is held that where the constitutionality of a law has been determined and settled by a long line of decisions, the court would decline to further consider the case as one within its appellate jurisdiction, the constitutional question being the sole one upon which the appellate jurisdiction of that court depended. Without being aware of this later decision, and acting under what we

supposed to be the latest decision of the Supreme Court on the question, that is Meng v. Railroad, supra, this court, in the two cases of State v. Cowan, transferred them to the Supreme Court, on the ground that they involved the construction of the Constitution of this state and of that of the United States, as applied to the Local Option Law of this state. [See State v. Cowan, 146 Mo. App. 621, 124 S. W. 586; State v. Cowan, 146 Mo. App. 656, 124 S. W. 587.] The Supreme Court, however, has recently transferred each of these cases back to this court, no opinion accompanying the order of transfer, obviously proceeding on the theory that the validity of the Local Option Law having been settled by previous decisions, its validity was no longer open to attack as unconstitutional. While it is true that our Supreme Court in the case of State ex rel. Campbell v. St. Louis Court of Appeals, 97 Mo. 276, 10 S. W. 74, held that the Court of Appeals was without jurisdiction to determine constitutional questions, when fairly raised by the record, while reserving to itself the right "to determine all jurisdictional questions," Sheets v. Ins. Co., supra, 615, its later decisions in the two cases last referred to, unmistakably and clearly mean that it holds, that this court is to proceed in the determination and adjudication of cases before it, even if a constitutional question is raised, when that constitutional question has been settled by the adjudications of the Supreme Court; that it presents a case in which, in the language of the court in Lee v. Jones, supra, "there is no longer a constitutional question in this state."

The precise constitutional point sought to be raised in this case, and which, it is claimed, presents a case of violation of the provisions of the 14th amendment to the Constitution of the United States, resolved into its ultimate conclusion is, that the statute, as interpreted by the trial court, violates that amendment in that it deprives the defendant of the equal protection of the laws

153 App—6

and violates the right of freedom of contract between the defendant company and the insured. This point has been so thoroughly settled, as to this particular form of insurance contracts, that is accident insurance, both by the decisions of the Supreme Court of this state and of that of the United States, that it may be said to be no longer a constitutional question in this state.

Our Supreme Court, in Cravens v. New York Life Insurance Co., 148 Mo. 583, 50 S. W. 519, held that an insurance contract, executed in this state, is subject to the laws of this state, anything in the contract to the contrary notwithstanding; that foreign insurance companies, doing business in this state, do so not by right but by grace, and must, in so doing, conform to the laws of this state; that the state may prescribe conditions upon which it will permit such companies to transact business within its borders, or may exclude them altogether, and in so doing violates no contractual rights of the company, and that the statute with respect to the subject-matter, in force at the time the contract is entered into within this state, becomes a part of the contract as much as if copied into it. This case was carried by writ of error to the Supreme Court of the United States and the decision of that court will be found in 178 U. S. 389, under the title New York Life Insurance Company v. Cravens. The decision of the Supreme Court of the United States followed and affirmed that of the Supreme Court of this state, holding (l. c. 401) that the power of a state to impose conditions upon foreign corporations is as extensive as the power over domestic corporations, citing and referring to Hooper v. California, 155 U. S. 648. [See, also, Ordelheide v. Modern Brotherhood, 226 Mo. 203, l. c. 211.] This same principle was later announced by the majority of our Supreme Court in Julian v. Kansas City Star Co., 209 Mo. 35, l. c. 67, 107 S. W. 496, and by the Supreme Court of the United States in Northwestern Life Ins. Co. v. Riggs, 203 U. S. 243, where Mr. Justice HAR-

LAN, delivering the opinion of the court says (l. c. 254) : "The state may well say to its own corporate creatures engaged in the business of life insurance that they shall not refuse to pay what they agreed to pay, simply because of some representations made by the insured which did not actually contribute to the contingency or event upon which the agreement to pay depended. If a life insurance corporation does not approve such a restriction upon the conduct of its affairs, it is its privilege to cease doing business. . . . That Missouri could forbid life insurance companies of other states from doing any business whatever within its limits, except upon the terms prescribed by the statute in question, cannot be doubted in view of the decisions of this court." In the same case, Mr. Justice HARLAN, referring to this very section of our statute, that is section 7896, says (l. c. 255) : "As the present statute is applicable alike to all life insurance companies doing business in Missouri, after its enactment, there is no reason for saying that it denies the equal protection of the laws. Equally without foundation is the contention that the statute, if enforced, will be inconsistent with the liberty guaranteed by the Fourteenth Amendment. The liberty referred to in that amendment is the liberty of natural, not artificial persons, nor in any true, constitutional sense, does the Missouri statute deprive life insurance companies doing business in that state of a right of property. This is too plain for discussion."

It seems to us that this eliminates the constitutional question entirely from this case, and so effectually as not to leave that open for either discussion or decision in the case at bar. Many other decisions of our own Supreme Court and of that of the United States, holding practically to the same effect might be cited, but the above decisions are so conclusive that it would be a work of supererogation to do so. We accordingly hold that the constitutionality of section

7896, Revised Statutes 1899, now section 6945, Revised Statutes 1909, as that section was construed by the learned trial judge, is not an open question in this state, and consequently that we have jurisdiction to determine this case on its merits.

Nor have we any doubt, considering the case on its merits, that the view which the learned trial court took of the policy, as tested by section 7896, of the statutes, is correct. This court, in Keller v. Travelers' Ins. Co., 58 Mo. App. 557, our Supreme Court in Logan v. Fidelity & Casualty Co., 146 Mo. 114, 47 S. W. 948, and the Supreme Court of the United States in Whitfield v. Aetna Ins. Co., 205 U. S. 489, as well as in Northwestern Life Ins. Co. v. Riggs, supra, and Knights Templar & Masonic Life Ins. Co. v. Jarmon, 187 U. S. 197, have, in our opinion, settled the main points of contention in this case against the appellant.

An examination of the briefs and arguments of counsel and of the opinions of the United States Circuit Court (125 Fed. Rep. 269) and of the United States Circuit Court of Appeals (144 Fed. Rep. 356), in the Whitfield case demonstrates that the arguments advanced here by the learned counsel for the appellant are practically the arguments advanced by counsel and the position taken by those two distinguished courts, when the Whitfield case was under consideration and decided by those courts. Those arguments, as well as decisions, were conclusively met and overturned by the decision of the Supreme Court of the United States when the Whitfield case reached it under writ of certiorari directed to the Circuit Court of Appeals.

As the decisions of this court and that of our Supreme Court above referred to are accessible to the bar of this state, it is unnecessary to do more than cite those cases. The Whitfield case being in the reports of the United States Supreme Court and not always accessible to the profession out in the state, it is thought not improper to notice it at length. It was an action

upon an accident policy of insurance, issued by a company incorporated under the laws of Connecticut, doing business in this state by authority of our laws. The policy specified various kinds of injuries entitling recovery of compensation, also the amount that would be paid by the company on account of such injuries respectively. It provided that if death resulted solely from such injuries within ninety days, the company would pay the principal sum of five thousand dollars to the beneficiary, and recited that it was issued to and accepted by the assured, subject to certain conditions. Among these conditions, so far as germane to the case at bar, is this, that in the event of death, loss of limb or sight or disability due to injuries intentionally inflicted upon the insured by any other person (except assaults committed for the sole purpose of burglary or robbery), whether such other person be sane or insane, or under the influence of intoxicants or not; or due to injuries received while fighting or in a riot; or due to injuries intentionally inflicted upon the insured by himself; or due to suicide, sane or insane; or due to the taking of poison, voluntarily or involuntarily, or the inhaling of any gas or vapor; or due to injuries received while under the influence of intoxicants or narcotics, then in all such cases above referred to, the limit of the company's liability "shall be one-tenth the amount otherwise payable under this policy, anything to the contrary in this policy notwithstanding." The plaintiff in the case, widow and beneficiary, alleged in her petition that the insured had died from bodily injuries effected through external, violent and accidental means and by a pistol shot, and demanded judgment for the full amount of the policy, with interest. The company, defendant, in its answer denied liability for the whole principal sum, and averred, among other things, that by the terms of the policy, in the event of death being caused by intentional injuries, inflicted by the insured, or while fighting, or in a riot, or by suicide, sane or insane, or by poison, or

by inhaling gas or vapor, that the amount to be paid should be one-tenth of the principal sum, and that the insured had died from bodily injuries caused by a pistol shot fired by himself for the purpose of taking his own life; that the cause of the death of said Whitfield was suicide. The plaintiff demurred to the answer. The demurrer was overruled and plaintiff filed a reply admitting that the insured died from bodily injuries caused by a pistol shot fired by himself and that the cause of his death was suicide, averring that he was insane when he committed the act. The case was tried, as was the case at bar, on an agreed statement of facts, it being admitted, among other things, that the insured died from bodily injuries caused by a pistol shot intentionally fired by himself, for the purpose of taking his own life, and that the cause of his death was suicide. The Circuit Court of the United States for the Western District of Missouri, in which the case was tried, found for defendant, holding that the plaintiff was entitled to recover only five hundred dollars, that being ten per cent of the total amount insured, and entered judgment for that amount. The opinion of the court being by Judge PHILLIPS, sitting as circuit judge, is reported in 125 Fed. 269. That judgment was affirmed by the Circourt Court of Appeals of the Eighth Circuit and is reported 144 Fed. 356. The case was taken to the Supreme Court of the United States upon writ of certiorari. Stating the case as above, Mr. Justice HARLAN delivered the opinion of that court, there being no dissent by any of the associate justices. In his opinion the learned justice says, among other things, after quoting section 7896, Revised Statutes 1899, now section 6945, Revised Statutes 1909, that assuming that the insured committed suicide without having contemplated self-destruction at the time he made application for insurance, the question arises as to whether the contract of insurance limiting the recovery to one-tenth of the principal sum specified was valid and enforceable. After

holding that the statute is a legitimate exercise of power
by the state, "provided it does not, in so doing, come
into conflict with the Constitution of the state or the
Constitution of the United States, Mr. Justice HARLAN
says: "There is no such conflict here. The legislative
will, within the limits stated, must be respected, if all
that can be said is that, in the opinion of the court, the
statute expressing the will is unwise from the stand-
point of the public interests." Examining the propo-
sition advanced by the Circuit Court of Appeals, and
on which that court had adjudged that the policy in
suit was not forbidden by the statute, Mr. Justice HAR-
LAN takes up the question of whether an insurance com-
pany and the insured can lawfully stipulate that in the
event of suicide not contemplated by the insured when
applying for the policy, the company shall be bound
to pay not the principal sum insured but only a given
part thereof, and says: "Will the statute, in a case of
suicide, allow the company, when sued on its policy,
to make a defense that will exempt it, simply because
of such suicide, from liability for the principal sum?"
He concludes that the Supreme Court cannot agree with
the learned courts below in their interpretation of the
statute. "The contract between the parties, evidenced
by the policy," says Mr. Justice HARLAN, l. c. 496, "is,
we think, an evasion of the statute and tends to defeat
the object for which it was enacted. In clear, emphatic
words the statute declares that in *all* suits on policies
of insurance on life it shall be *no* defense that the in-
sured committed suicide, unless it be shown that he
contemplated suicide when applying for the policy.
Whatever tends to diminish the plaintiff's cause of ac-
tion or to defeat recovery in whole or in part amounts
in law to a defense. When the company denied its lia-
bility for the whole of the principal sum, it certainly
made a defense as to all of that sum except one-tenth.
If, notwithstanding the statute, an insurance company,
may by contract, bind itself, in case of the suicide of

the insured, to pay only one-tenth of the principal sum, may it not lawfully contract for exemption as to the whole sum or only a nominal part thereof, and if sued, defeat any action in which a recovery is sought for the entire amount insured? In this way the statute could be annulled or made useless for any practical purpose. Looking at the object of the statute, and giving effect to its words, according to their ordinary, natural meaning, the legislative intent was to cut up by the roots any defense, as to the whole and every part of the sum insured, which was grounded upon the fact of suicide. The manifest purpose of the statute was to make all inquiry as to suicide wholly immaterial, except where the insured contemplated suicide at the time he applied for his policy. Any contract inconsistent with the statute must be held void," referring to Berry v. Knights Templars' etc., Co., 46 Fed. 441, and Knights Templars' Indemnity Co. v. Jarmon, 187 U. S. 197, as cases in which the scope and effect of the statute were in question and noting that the view of that statute, as taken by counsel in those cases, was not accepted by the circuit court, and that its judgment against the company for the whole sum insured was affirmed in the Supreme Court of the United States. Mr. Justice HARLAN also refers to Logan v. Fidelity & Casualty Co., 146 Mo., supra, and quotes from it extensively, and also refers to and quotes from Keller v. Travelers' Insurance Company, 58 Mo. App., supra, as cases very much in point, quoting from each of them approvingly, and concludes his opinion thus (l. c. 501) : "Without further discussion we adjudge that under the statute in question—anything to the contrary in the policy notwithstanding—where liability upon a life policy is denied simply because of the suicide of the insured, the beneficiary of the policy can recover the whole of the principal sum, unless it be shown that the insured, at the time of his application for the policy, contemplated suicide." The judgment of the Circuit Court of Appeals and that of the Circuit

Court of the Western District of Missouri were reversed and the cause remanded for further proceedings in accordance with the opinion.

It may be further said that the clause of the policy providing for the payment of ten per cent of the amount insured in case of death by gas, vapor or poison, construed in connection with the clause in the policy which provides that in case of suicide, there can be no recovery under the policy, means that the first provision is against an accidental killing and not suicide. Even if that is so, it is no defense under the statute. This, however, is not a case of accident, but of design —a case of suicide by poison.

In the argument of this case at bar, as well as by printed brief, the learned counsel for the appellant suggest that the statute was not applicable because defendant had not set and was not setting up suicide as a defense. Literally, this is not true; the answer carefully and skillfully avoids that. But this argument is effectually disposed of in an opinion of the Supreme Court of the United States in the Whitfield case, supra, where, to repeat, Justice HARLAN says at page 496, "Whatever tends to diminish the plaintiff's cause of action or to defeat recovery in whole or in part amounts in law to a defense." It is immaterial that the defense was anticipated by the petition and that the answer does not, in terms rely on suicide as a defense. The present action is to recover the whole amount specified in the policy. Appellant here, defendant below, is defending against that. While it is true that it does not in terms and by its answer set up suicide as a defense to the policy, it is beyond question that it is defending against a recovery for the whole amount of the policy, on the ground that the insured died from taking poison. Whether he took that poison accidently or of purpose is not material here. If the fact that he died from the effect of poison, which it is admitted he took with suicidal intent, is not urged by the appellant as defense against the

action, then it follows that it is before the court without having interposed any defense whatever in this case. It seems a rather narrow argument to say that while the answer avers the insured died by poison, and stops there, that therefore the defendant has, by its pleading, cut out and eliminated the statute, although in fact it appears by agreed facts that the insured took the poison with suicidal intent. This is hardly even specious: it certainly is not sound. The argument is also advanced that suicide does not give a cause of action. That is true. The cause of action arises on the policy as interpreted by the statute and by reason of the death of the insured. The policy, as interpreted by the law and by the courts, does provide that when death occurs from suicide, whether that suicide is accomplished by poison or by shooting, the beneficiary shall recover for the full amount insured to be paid by reason of death occurring. The statute eliminates suicide as a defense. The contention apparently made by the answer, that this section 7896 applies to life policies alone and not to accident, was disposed of by our Supreme Court in the case of Logan v. Fidelity & Casualty Co., supra, against this contention. Upon the record the judgment of the circuit court should be and it accordingly is affirmed. *Nortoni, J.,* and *Caulfield, J.,* concur.