JULIA CONNELL, Appellant, v. IOWA STATE TRAVELING MEN'S ASSOCIATION.

**Benefit insurance:** SUICIDE: PRESUMPTION: EVIDENCE. The presumption
1   that death was accidental has the force of affirmative evidence, and the burden of proving suicide as a defense to an action on a certificate of life insurance is on the association; and in the absence of direct testimony the proven circumstances must be such as to exclude any other reasonable hypothesis as to the cause of death. In the instant case the proven circumstances presented a jury question as to the cause of death.

**Benefit insurance:** NOTICE OF DEATH: BY-LAWS: STATUTES. An as-
2   sociation doing a mutual insurance business which has brought itself within the provisions of chapter 8, title 9 of the Code, one of which declares that a provision in the contract of insurance limiting the time for giving notice of death to less than one year after knowledge of the fact has come to the beneficiary shall be invalid, is governed thereby, even though it might have done business without complying with the statute; and a by-law in contravention of the statute is void.

**Same.** An association which collects from its members a member-
3   ship fee, annual dues and assessments upon the death or disability of a member, keeps a fund in its treasury to be paid, after payment of expenses, to the member in case of disability and to his beneficiary in case of death, is a mutual assessment association, and cannot claim exemption from the provisions of chapter 8, title 9 of the Code, relative to the giving of a death notice, on the ground that it is a charitable institution.

**Exemption from liability:** CONDITIONS: BURDEN OF PROOF. A by-law
4   of a mutual insurance company providing nonliability for injury causing death by firearms in the absence of an eyewitness, is not a condition precedent to the taking effect of the certificate, but one avoiding liability upon the happening of a particular event, which to be available as a defense in an action on the certificate must be pleaded and proved.

*Appeal from Polk District Court.*— HON. W. H. Mc-HENRY, Judge.

WEDNESDAY, JUNE 10, 1908.

REHEARING DENIED TUESDAY, SEPTEMBER 29, 1908.

A CERTIFICATE of life insurance was issued by defendant on the life of Thomas D. Connell, October 7, 1905. He died October 24, 1906, and in this action a beneficiary demands· the indemnity stipulated. A verdict was directed for defendant, and judgment entered accordingly. The plaintiff appeals.— *Reversed.*

*Parrish & Dowell* and *George R. Sanderson,* for appellant.

*Sullivan & Sullivan,* for appellee.

LADD, C. J.— Three defenses are interposed to recovery on the certificate of insurance issued to deceased: (1) That death resulted from suicide, the by-laws exempting the

1. BENEFIT INSURANCE: suicide: presumption: evidence.

company from liability in such a case, regardless of the sanity or insanity of the assured; and (2) that written notice of death was not given, as required by the by-laws; and (3) that death resulted from the discharge of firearms in the absence of an eyewitness, the by-laws providing in that event there should be no liability. These propositions may be disposed of in the order mentioned. Near noon on October 24, 1906, the deceased was found about four feet from Birdland, a driveway in Des Moines from Sixth avenue north of the Des Moines river through Woodland to Union Park, about a third of the way from the Gun Club to the street railway bridge. He was lying on his back under a tree, with his head to the west, his left arm resting on the body and extending down near the abdomen, and his right arm extending over the stomach to the elbow of the left. There was a bullet wound at the perietal eminence; that is, above and in front of the

ear, near the part of the hair on the left side of the head. There was no indication of the direction of the bullet, and no powder marks or other discoloration near were noticed. Deceased had a handful of cartridges in his right trouser pocket. A revolver was lying beneath the left elbow. Two chambers were empty, and the others loaded. Death resulted from the wound. Appellee insists that the evidence proved suicidal death, and no doubt such an inference might be drawn. But we do not regard the evidence as conclusive. The circumstances were not necessarily inconsistent with the conclusion that it might have been homicidal, nor is the inference that it was accidental necessarily excluded. The burden of proof was on the association to establish this defense. The presumption that death was accidental has the force of affirmative evidence, and before it can be said that the defense is conclusively established, the facts and circumstances proven must be such as to exclude any other reasonable hypothesis than that it resulted from suicide. *Stephenson v. Bankers' Life Ass'n,* 108 Iowa, 637. In that case the theory that death was self-inflicted had much stronger support in the evidence than in the case at bar, and yet the court held that the issue was for the jury. In *Inghram v. National Union,* 103 Iowa, 404, and also in *Beverly v. Supreme Tent Maccabees,* 115 Iowa, 526, the evidence was such as to lead irresistibly to but the one conclusion that death was self-inflicted. No advantage is to be derived from a review of the cases, for the facts of no two are alike. The plain recital of the facts is the best answer to the contention that the inference of suicide was necessarily to be drawn therefrom. The issue was for the jury.

II. The by-laws of the association exacted written notice of death of a member within fifteen days after its occurrence. None was given until about twenty days thereafter, but appellant contends that the above provision is void. Section 1820 of the Code, found in chapter 8, title 9, declares:

2. BENEFIT INSURANCE: notice of death: by-laws: statutes.

No stipulation or condition in any policy or contract of insurance or beneficiary certificate issued by any company or association mentioned or referred to in this chapter, limiting the time to a period of less than one year after knowledge by the beneficiary within which notice or proofs of death or the occurrence of other contingency insured against must be given, shall be valid.

Associations referred to in the chapter are defined by section 1784 of the chapter previous:

" Every corporation organized upon the stipulated premium plan or assessment plan, for the purpose of insuring the lives of individuals or furnishing benefits to the widows, heirs, orphans or legatees of deceased members, or accident indemnity, shall be styled an ' association,' and any corporation doing business under this chapter which provides for the payment of policy claims, accumulation of a reserve or emergency fund, the expense of management and prosecution of the business, by payment of stipulated premiums, assessments or periodical calls, as provided in the contracts, and wherein the liability of the insured to contribute to the payment of policy claims is not limited to a fixed amount, shall be deemed to be engaged in the business of life insurance upon the stipulated premium plan, or assessment plan, and shall be subject to the provisions of this chapter, and chapter eight, of title nine.

The defendant association is included in this definition, so that the exaction in the by-law of notice within fifteen days was void, unless it may be said to be exempt from the above provisions because of section 1798, which reads:

Nothing in this chapter shall be construed to apply to any association organized solely for benevolent purposes and composed wholly of members of any one occupation, guild, profession or religious denomination, but such society may, by complying with the provisions hereof, become entitled to all the privileges thereof, in which event it shall be amenable to the provisions of this chapter so far as they are applicable.

It is not clear how defendant can avail itself of this section, for, even if it might have done business without complying with the provisions of the chapter, it has done so, and therefore is enjoying the privileges thereof, and is subject to the portions of the chapter, which are applicable.

Waiving this, however, it is not perceived on what theory the association can be held to have been "organized solely for benevolent purposes." Of course, there is an element of charity in every scheme for the insurance of lives, for the design of the insured is nearly always to provide for others, without valuable consideration to himself; but, as between the insured and the association, the relation is purely that of contract, of " quid pro quo." "All that is requisite to constitute such a con-. tract is payment of the consideration by the one, and the promise of the other to pay the amount of the insurance upon the happening of the injury to the subject by a contingency contemplated in the contract." Commonwealth v. Wetherbee, 105 Mass. 149. It is not material what professions are made in the articles or by-laws. Its manner of doing business and the nature thereof necessarily control. State v. Miller, 66 Iowa, 26. The business of this association is to collect funds from its members in the way of a membership fee of $4, annual dues of $1, and an assessment upon the death of any member in good standing of $2 from each member. The amount in the treasury is not to be reduced below $5,500, and an assessment may be made, when necessary in the course of business, to carry out the aims and objects of the association. The money after meeting the expenses is paid to the members in case of disability, or to their families, heirs or beneficiaries in event of death, one assessment being payable to the beneficiary, not exceeding $5,000 in any case. If the association engages in any charitable work, aside from erroneously designating that outlined above in its articles as such, the record before us does not disclose the fact. It is not other than a mutual assess-

3. SAME.

ment association, and its claims to being a charitable institution are little less than preposterous.   As supporting these views, see *Insurance Co. v. Gilbertson,* 129 Iowa, 659; *Grimes v. Legion of Honor,* 97 Iowa, 315; *State v. Nichols,* 78 Iowa, 749; *State v. Miller, supra.*   It follows that the by-law was void, as contrary to the laws of the State.

III.   Another by-law provided that the association should not be liable " for any injury to a member whether resulting in death or otherwise for any injury resulting from the discharge of firearms, where there is no eyewitness to the discharge, except the member himself."   This was not a condition precedent to the going into effect of the certificate, but one avoiding liability in a particular event — that is, death by firearms in the absence of an eyewitness — and like conditions in policies exempting the company or association when death results from fighting, voluntary exposure to unnecessary danger, intoxication, and the like must be alleged and proven by the insurer to be available as a defense.   *Jones v. Accident Ass'n,* 92 Iowa, 652; *Follis v. Accident Ass'n,* 94 Iowa, 435; *Payne v. Accident Ass'n,* 119 Iowa, 342.   In *Freeman v. Traveler's Ins. Co.,* 144 Mass. 572 (12 N. E. 372), the policy was accepted " subject to all the provisions herein contained or referred to," the third of which was that the " insurance shall not extend to any bodily injury   .   .   . when death or injury may have happened in consequence of   .   .   .   voluntary exposure to unnecessary danger, hazard or perilous adventure."   It was also stipulated that the policy was subject to the condition that the party insured " is required to use all due diligence for personal safety and protection."   This was held to be a condition subsequent, and that under the rules of pleading the burden of alleging and proving a breach was on the insurer; the court noting in the course of the opinion the practical wisdom of requiring an insurance company to allege and prove want of compliance with any particular provision or condition on which it relies.

*Marginal note:* 4. EXEMPTION FROM LIABILITY: conditions: burden of proof.

This was on the ground that where the "instrument contains in it, first, a general clause, and afterwards a separate and distinct clause, which has the effect of taking out of the general clause something that would otherwise be included in it, a party relying upon the general clause, in pleading, may set out that clause only, without noticing the separate and distinct clause which operates as an exception; but if the exception itself be incorporated in the general clause, then the party relying on it must, in pleading, state it, together with the exception." *Commonwealth v. Hart,* 11 Cush. (Mass.) 130, 134.

Now the general purpose of this association, as expressed in the articles of incorporation, was to "pay indemnity and benefits to its said members, their families, heirs or beneficiaries, on account of injuries sustained by them, whether fatal or disabling, effected through or by external, violent and accidental means, and under such provisions, limitations and exceptions as may be fixed by the constitution or by-laws of this association." A by-law exacts such payment "whenever a member in good standing shall, through external, violent, and accidental means, which shall, independently of all other causes, result in death within twenty-six weeks from said accident." Like the exemption from liability in event of suicide, that under consideration is noted in the by-laws as an exception, and like exceptions, generally not incorporated in the provisions creating liability, must be set up and proven as a defense by the insurer. The record does not disclose whether there was an eyewitness, as the only witness testifying to seeing deceased on the ground before his removal to the hospital related that four persons were there upon his arrival. It follows that the court erred in directing a verdict.— *Reversed.*