## Delmar F. Reynolds and Alice M. Reynolds, by Alice H. Cobb, Appellees, v. North American Union, Appellant.

### Gen. No. 22,698.

1. DEATH, § 2*—*existence in State of common-law rule as to presumption of.* The common-law rule of presumption of death from seven years' absence prevails in Illinois.

2. INSURANCE, § 747*—*when subsequent by-law of fraternal beneficial association is binding upon insured.* A fraternal beneficial association may legally adopt a by-law subsequent to the issuance of an insurance certificate which shall be applicable to and binding upon the insured under such certificate where the certificate expressly provides that the insured shall comply with all laws, rules and regulations of the association enacted after the issuance of such certificate.

3. INSURANCE, § 747*—*when subsequently enacted by-law requiring proof of death other than by presumption arising from absence is invalid.* Where a fraternal insurance certificate provided that the insured would comply with the laws, rules and regulations of the association, including those which might be enacted thereafter, and the insured complied with all such laws, rules and regulations up to a certain date, when he disappeared, and his beneficiaries continued from and after that date to comply therewith and paid all dues and assessments levied upon the certificate, and the association received and accepted such payments with full knowledge of the disappearance of the insured until more than seven years since his disappearance had elapsed, and the circumstances of the case were such that under the common-law rule as to the presumption of death from seven years' absence the death of such insured would be presumed and legal proof thereof could be made under such certificate, *held* that a by-law enacted three months only prior to the expiration of said seven years, providing in effect that there should be no recovery under any certificate because of death occurring prior to the expiration of the term of the insured's life expectancy except upon proof of death other than by presumption from absence or disappearance, was unreasonable and invalid and of no effect as to such certificate, irrespective of the question whether such by-law was against public policy or in contravention of law or was illegal *per se.*

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

4. INSURANCE, § 121*—*when common-law rule as to presumption of death from absence is part of contract.* The common-law rule as to presumption of death from seven years' absence, *held,* though a rule of evidence, to be a material part of a contract of life insurance.

5. INSURANCE, § 747*—*necessity that subsequently enacted laws modifying contract be reasonable.* Where a fraternal · insurance certificate provided that the insured would comply with all laws, rules and regulations of the association then or thereafter enacted, *held* that while the association would have the right and power to modify the contract of insurance by subsequently enacted laws, rules and regulations it must act in so doing reasonably and with some regard for the rights of the insured and of the beneficiaries and in good faith without doing substantial injustice to him or them.

Appeal from the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding. Heard in this court at the October term, 1916. Affirmed. Opinion filed March 12, 1917. *Certiorari* denied by Supreme Court (making opinion final).

C. V. DONOVAN and EDWARD S. CUMMINGS, for appellant.

F. D. HEDGES and J. C. DE WOLFE, for appellees.

MR. JUSTICE DEVER delivered the opinion of the court.

Plaintiffs, minors, by their next friend, brought suit in the Circuit Court, charging in their declaration that the defendant, North American Union, a fraternal benefit association, was legally liable to them under a certificate or policy of insurance by the terms of which defendant insured the life of their father, Frederick G. Reynolds, in the sum of $2,000, and also a sum equal to ten per cent. of the amount which the said Reynolds had contributed to defendant's reserve fund. The defendant in the certificate issued bound itself to pay said sums to plaintiffs on the death of the insured. The case was tried by the court without a jury, and all

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

of the facts upon which the finding and judgment of the court were based were stipulated of record by counsel for the respective parties. The court found the issues for the plaintiffs and entered judgment in their favor for the sum of $2,294. Defendant brings the case to this court and requests a reversal of this judgment.

It is stated in said stipulation, among other things, that the insured became a member of the defendant association on December 23, 1897; that a benefit certificate was issued by the defendant to him in the principal sum of $2,000, payable to the beneficiaries upon satisfactory proofs being furnished to the defendant association of his death. It was also provided in said certificate that it was issued subject to full compliance by the said Reynolds and his beneficiaries with the constitution, laws and rules and regulations of the defendant association in force at the time said Reynolds became a member thereof and as might thereafter be adopted or amended.

The plaintiffs, Delmar F. and Alice M. Reynolds, were aged respectively eighteen years and fourteen years at the time of the commencement of this suit. Frederick G. Reynolds, the insured, in 1906 was by occupation a clerk employed by the Adams Express Company in Chicago. On or about the first day of August, 1906, he left his home in Chicago, "intending to go on a vacation trip through the eastern States but not knowing his exact destination; that on or about August 10th, 1906, the two children, Delmar F. and Alice M. Reynolds, received postal cards from him, which were postmarked 'Cincinnati, August 9, 1906, 2 a. m.,' which were the last communications received from him by his family, neighbors or relatives; that said postcards did not specify hotel or mail address; that said Reynolds was fond of his family, and his home relations were pleasant; that he had been in

ill health for some time, and was tired and worn out from his work, and was subject to frequent attacks of severe headaches; that he was a man of good habits and was thirty-three years of age at the time of his disappearance, and on the morning of his leaving home he was in good spirits and expected to return home in two or three weeks; that upon said Reynolds' failure to return home from his trip, Mrs. Alice H. Cobb, his mother-in-law, made inquiries among his business associates, and his brothers and sisters, who resided in Aurora, Illinois, and of his father, who resided at Beloit, Wisconsin. Mrs. Cobb kept up correspondence with his relatives and made inquiries about him, and informed them that he had disappeared, but was unable to get any clew of him or his whereabouts; that publication was made in the Chicago newspapers, for information as to the whereabouts of the said F. G. Reynolds, at frequent intervals during the seven years next following his disappearance; that the fact of his disappearance was reported to the police department of the City of Chicago, shortly after the said 10th day of August, 1906, and inquiries were also made as to the whereabouts of said Reynolds, of the police department of Cincinnati, Ohio, and the police departments of other cities throughout the United States and Canada, but without any results. His family have never heard from him since receiving the postal cards from Cincinnati, Ohio, postmarked August 9, 1906, and believe him to be dead. Diligent search and inquiry have been made in the vicinity of said Reynolds' home, and at such places as he would be liable to go, and from such person as would be liable to meet and know him, and nothing has been heard from, or of him, and he has not returned to his home or family at any time since the date of his disappearance in August, A. D. 1906, as aforesaid.''

It was further stipulated that the defendant associa-

tion in the month of April, 1911, published in its official journal a photograph of the said Reynolds, and in a notice in connection therewith requested readers of the publication to forward to the office of the defendant any information they might possess with reference to the "present location of the missing brother."

The fact of the insured's disappearance was reported by Mrs. Alice H. Cobb, the mother-in-law of the insured and grandmother of the plaintiffs, to the defendant after his disappearance, and she paid the dues and assessments on the benefit certificate on his behalf and on behalf of his beneficiaries to the defendant, and the defendant accepted said dues and assessments with full knowledge of the fact of the insured's disappearance. These dues and assessments were paid by Mrs. Cobb up to and including the month of August, 1913, a period of seven years after said Reynolds disappeared. On September 1, 1913, Mrs. Cobb on behalf of the beneficiaries made demand upon the defendant to pay the plaintiffs the sum due under the certificate, but defendant refused to comply with said demand and still refuses to pay said amount.

It was also stipulated that in the month of May, 1913, section 20 of law 3 of the by-laws of the defendant association was duly adopted by the defendant and was in full force and effect from and after its passage; that said by-law adopted in May, 1913, was not in force, nor was any similar law or provision in force, at the time Reynolds became a member of the defendant association or at any time prior to May, 1913. It was further stipulated that "the only question to be determined in this case is whether the insured, Frederick G. Reynolds, and his beneficiaries, under the said benefit certificate, are bound by said law." The by-law adopted by the defendant association in May, 1913, is as follows:

"The absence or disappearance of a member from

his last known place of residence, and thereafter being unheard of, shall not be held or construed to be evidence of the death of such member, nor create or establish a right to payment or recovery of any benefits under his certificate or policy or his membership in the Order in the absence of competent proof of his death, other than such as might arise from any presumption by reason of such absence or disappearance, until the expiration of the full term of his life expectancy at his age of entry into the Order as determined from and by any recognized standard table of mortality, and then only in case all combined monthly premiums, special assessments, dues and other sums required to be paid under the laws of the Order have been promptly paid for or on behalf of such member during the full period of his life expectancy. The provisions of this law shall operate, and be held and construed as a waiver on the part of such member, and his beneficiaries, named and legal, of any and all statutes or laws of any State or country to the contrary; provided, however, that in case such member is the holder of a term certificate or policy, the Order shall not be liable for any benefits under the same, or the membership of such member in the Order, unless proof of the actual death of such member, in the manner and form required by the laws of the Order in other cases, is made, unassisted by and independent of any presumption arising by reason of such absence or disappearance, if the expiration of the term provided in said certificate or policy shall occur before the expiration of the term of his life expectancy.''

Counsel for the respective parties have in the briefs filed herein discussed several questions as to which there does not seem to be much doubt concerning the law. It may be conceded that the common-law rule of presumption of death from seven years' absence prevails in Illinois and is applicable in certain cases where recoveries are sought against fraternal benefit associations under certificates of insurance issued by such associations.

The benefit certificate in question was issued by the defendant association upon the express condition that the insured would comply with the laws, rules and regulations of the defendant, including such laws and rules as might be enacted after the issuance of the certificate. The by-law of May, 1913, adopted by the defendant was one which it had a legal right to adopt.

In *Apitz v. Knights of Honor,* 274 Ill. 196, the court said:

"We have held that the beneficiary has no vested interest in the certificate, and where the contract between the member and the society reserves the right to the society to amend or change the by-laws, and the member agrees to be bound thereby and accepts the certificate under those conditions, subsequently enacted by-laws are binding upon him. (*Royal Arcanum v. McKnight,* 238 Ill. 349, and cases there cited.) 'A party cannot claim the right to have a contract remain unaltered when the contract itself provides that it may be changed.'"

It is too late at this time to question the validity of the provision of the certificate in question which provided that Reynolds, the insured, was to be bound by any by-laws enacted by the defendant society subsequent to the admission of the insured as a member. That question has been definitely disposed of by the Supreme Court of this State.

It is urged, however, that the by-law in question must be held to be inoperative as against the plaintiffs in this case for two reasons: First, that it is in contravention of the common-law rule that where an individual disappears and has not been heard from for more than seven years the presumption arises that he is dead; and second, that under the facts and circumstances of the instant case the by-law should be held to be inoperative as against the plaintiffs on the ground of unreasonableness.

In support of their contention that the by-law in

question precludes a recovery in favor of plaintiffs, counsel for defendant rely upon the case of *Apitz v. Knights of Honor, supra; Kelly v. Catholic Mut. Ben. Ass'n,* 46 N. Y. App. Div. 79, and *McGovern v. Brotherhood of Firemen & Engineers,* 21 Ohio Cir. Ct. 243.

. In the *Apitz* case, *supra,* the by-law under consideration provided that in case the disappearance of a member continued for one year such member should stand suspended from the society as in case of suspension for the nonpayment of dues and assessments.

In the *Kelly* case, *supra,* the by-law of the society provided that: ''No time of absence or disappearance on the part of the member without proof of actual death should entitle his beneficiary to recover upon his membership certificate.''

In both of these cases it was held that the by-laws referred to were not unreasonable and that they were not void as against public policy. ''The parties, as we have seen, had a legal right to enter into an agreement of this character, and it cannot be said to be illegal, unreasonable, inconsistent with the objects and purposes of the corporation, or repugnant to the law, to public policy or to good morals.'' *Kelly* case, *supra.* The by-law under consideration in the *Apitz* case, *supra,* was quite different in its terms and effect upon the rights of a member or his beneficiaries from the one under consideration here; the effect of the by-law in that case was to automatically suspend the membership of the insured after a disappearance for a period of one year. The *McGovern* case, *supra,* is more directly in point, and seems to be in support of the contention made by the defendant.

In *National Union v. Sawyer,* 42 App. Cas. (D. C.) 475, the insured disappeared on June 5, 1905, and on October 1, 1906, a by-law was adopted by the society substantially the same as the one under consideration

here. In deciding the case the court said: "A general
authority to make by-laws or amendments does not au-
thorize the passage of one that contravenes the law
of the land. The statute declares the general policy of
the law and the by-law or regulation contravening the
statute is necessarily without effect."

In *Samberg v. Knights of the Modern Maccabees,*
158 Mich. 568, the insured disappeared on October 16,
1900, and in June, 1904, the defendant adopted a by-
law which provided in substance that no benefits
should be paid under the certificate of membership un-
til the death of the insured had been satisfactorily
proven, "aside from any presumption that might arise
by reason of his absence." The court said:

"We have already quoted the statute in relation to
the presumption arising from a seven years' absence
without intelligence concerning the person. It was un-
doubtedly enacted to meet a necessity growing out of
the experiences of men. This rule has also been recog-
nized in the absence of a statute.   *   *   *   It cannot
be said that the insured in subscribing to his applica-
tion contemplated the adoption of a by-law that would
have the effect to render the provisions of a wholesale
statute nugatory, and to have the further effect of mak-
ing it practically impossible to make proofs of death
in cases within the occasional experience of men."

Our attention has been called to cases involving the
effect of the passage of by-laws by associations such
as the defendant in this case, wherein it was provided
by such by-laws that members were required, under
penalty of suspension, to give notice to the association
of change of residence, and that failure to report such
change of residence or failure to attend upon meet-
ings for certain periods of time would result in a sus-
pension of the membership of the insured. We do not
think that such cases aid greatly in determining the
question to be disposed of here. In those cases no
great hardship or injustice can be said to have been

imposed upon a member or his beneficiary by the adoption of such by-laws after the issuance of a certificate of membership. In the case at bar, the necessary effect of the by-law in question, under the circumstances of the case, was to relieve the defendant of practically all liability under the certificate which it had issued to the insured, and under which he or his beneficiaries had paid dues and assessments for a period of about sixteen years. The by-law referred to here was adopted about three months before the expiration of the period of time which, in the absence of the by-law and under the law of the State of Illinois, would have permitted the plaintiffs to have made legal proof of the death of the insured. The evidence discloses that the defendant was promptly notified of the disappearance of the insured in August, 1906. It made efforts to discover his whereabouts, and it continued to receive dues and assessments from his beneficiaries up to May, 1913, when the by-law in question was adopted, and thereafter until August, 1913, when the plaintiffs would, in the absence of the by-law, be entitled to recover under the certificate of membership.  •

There is not much harmony in the decisions with reference to the question of whether a by-law such as this can be said to be void as being against public policy or as being in contravention of public law, but whatever may be held as to this question, we are inclined to the view that under the facts and circumstances of this case the by-law in question must be held to be unreasonable and inoperative against the plaintiffs. We do not believe that the insured when he agreed to abide by any future enacted by-law of the defendant intended to give defendant the right, without his consent or the consent of his beneficiaries, to so materially modify the contract of insurance as to practically deprive the beneficiaries of all right to any benefit from the dues and assessments which had been

paid for sixteen years to the defendant. Even if it be assumed that the by-law was not *per se* illegal, or that it is not against public policy or in contravention of the law of the State, we are still of the opinion that it must be held in the circumstances of this case to be unreasonable.

The common-law rule relating to presumption of death after an absence of seven years has been held by the Supreme Court of this State to be a rule of evidence. This common-law rule, however, was a material part of the contract of insurance entered into between the insured and the defendant. The right and power of the defendant association to modify this contract may be conceded, but in the exercise of this right or power the law insists that the defendant must act reasonably and with some regard for the rights of the insured and his beneficiaries. It may well be held that under other circumstances a by-law such as the one in question would not be invalid. Here, however, it makes such a change in the essential rights of the parties as that its effect was not merely to modify the contract, but practically to relieve the defendant from any liability under it. Contracts of insurance are generally entered into by persons who desire to protect those depending upon them in the event of death before the end of the period of life expectancy as fixed by the standard tables of mortality. The modification of the contract of insurance entered into in this particular case would necessarily have compelled the beneficiaries to continue the payment of dues for a period of twenty-four years following the year 1913. It is conceded that the insured was in ill health at the time he disappeared. If his death in fact occurred within a short time after such disappearance, then his beneficiaries or some one for them have been paying dues and assessments under the policy for a number of years after his death had actually taken place. The adoption

of the by-law in question at the end of this seven-year period, and extending such payments for another period of twenty-four years, under the facts of this case is so opposed to one's sense of justice as, we believe, to authorize the holding that the by-law was unreasonable as against the claim of plaintiffs in this case.

In *Convery v. Brotherhood of Railroad Trainmen,* 190 Ill. App. 479, it was insisted by the fraternal benefit organization that "as section 70 leaves it wholly within the discretion of the beneficiary board whether they will pay any disability claims or not, and provides that said section may be pleaded in any suit brought on said certificate, and that no appeal shall be allowed from the action of said board and that said board having rejected the claim of appellee, he has no remedy." In deciding the case the court said:

"These provisions are clearly contrary to public policy. In the case of *Brotherhood of Railway Trainmen v. Greaser,* 108 Ill. App. 598, the court in passing upon this section states in its opinion: 'The trend of judicial authority is so decidedly against the propriety of allowing one of the parties or its special representatives, to be judge or arbitrator in its own case, that even a strained interpretation will be resorted to, if necessary to avoid such a result. If a different construction is fairly admissible it should be adopted.'"

While the question under consideration in the instant case is not the same as that in the case last referred to, the reasoning of that case may well be adopted in this. Modifications of contracts of insurance should be made in good faith. We think there is ample evidence in this record for the belief that the by-law in question was not adopted in good faith; at all events, its effect was to do a substantial injustice to the plaintiffs.

The judgment of the Circuit Court is affirmed.

*Affirmed.*