SUSAN E. ROLLINS, Respondent-Appellant, v. BUSI-NESS MEN'S ACCIDENT ASSOCIATION OF AMERICA, Appellant-Respondent.

Springfield Court of Appeals, February 28, 1920.

1. **APPEAL AND ERROR:** Where Judgment on Accident Policy is Reversed, Beneficiary Cannot Complain of Denial of Attorney's Fees and Claim Vexatious Delay. Where a judgment in favor of a beneficiary of an accident policy must be reversed, the beneficiary's appeal from the denial of attorney's fees and for claim for vexatious delay cannot be sustained.

2. **INSURANCE:** Refusal to Pay Because of Mooted Question of Insurance Law Not Vexatious Delay. Insurance company is not liable for attorney fees and penalties for vexatious delay for refusing to pay on demand because of a question of insurance law which had been, and was at time of such demand, a mooted question in the State.

3. **PLEADING:** Alternative Plea That Deceased Either Committed Suicide or Died by Accident is Bad. In an actnio on, accident policy, an alternative plea that the insured met his death as a result of an accidental discharge of a shotgun, or that the gun was discharged by him with intent to commit suicide, is bad, being in the alternative; for one averment would entitle the beneficiary to recovery on the policy, and the other not.

4. **INSURANCE: Intentional Sane Suicide Not an "Accident" Allowing Recovery Under Accident Policy.** If insured met his death by intentional suicide, while sane, no recovery could be had under a policy insuring against accidental death; such death not being an "accident," and the suicide section of the statute (Rev. St. 1909, Sec. 6945) being in no way involved.

5. **CONTRACTS: Provision in Accident Policy Requiring Eye-witnesses Invalid as Ousting Court of Jurisdiction: "Direct and Positive Evidence."** A provision in an accident policy declaring that, if the insured receives bodily injuries, fatal or otherwise, from the discharge of firearms, the claimant shall establish the accidental character of the injury by the testimony of at least one eyewitness other than the insured, etc., is invalid, because infringing on the province of the court in determining what mode of proof shall be required; the provision going further than to require direct and positive evidence, which is evidence communicated by those who have actual knowledge by means of their senses, and requiring an eyewitness.

Appeal from Circuit Court of Howell County.—*Hon. E. P. Dorris*, Judge.

REVERSED AND REMANDED.

*Gilmore & Brown* and *R. S. Hogan* for appellant-respondent.

*Stephen C. Rogers* and *John C. Dyott* for respondent-appellant.

FARRINGTON, J.—This is an appeal and cross-appeal from Howell County, Missouri, from a judgment rendered in a suit on an accident insurance policy by the defendant (which we will designate hereafter as the Association), on the life of Elisha M. Rollins, deceased, in favor of the plaintiff, Susan R. Rollins, his wife. There was a judgment for the full amount of the principal sum of the policy in favor of the plaintiff. She also sued for attorney fees and vexatious delay. She received nothing on this latter account and files her appeal from the action of the court in dealing with the attorney fee and vexatious delay question.

In the beginning, we may say that plaintiff's cross-appeal can be disposed of at once, because of the fact that the judgment here in her favor for $5236.37, on account of an erroneous instruction, must be reversed, and also for the reason that the question raised in the trial of this cause is one that has been and was a mooded question in this State at the time the demand was made on the defendant to pay under the policy and the refusal thereof by it.

A constitutional question was raised in the circuit court charging that section 6945, Revised Statutes 1909, was unconstitutional and invalid. This cause on both appeals was then taken to the Supreme Court. That court, in an opinion rendered on June 2, 1919, reported in 213 S. W. 52, held that there was no constitutional question before it and transferred the cause here. A statement of the case is made in that opinion, and we refer to the statement of facts set forth there as a part of this opinion.

The case as it stands here for determination, after the disposal of plaintiff's cross-appeal, has but three questions to be determined; first, on the sufficiency of the petition; second, on the giving of instructions for the plaintiff permitting a recovery on this accident policy in the event that the insured intentionally committed suicide; third, on the validity of Clause 15 in the policy, which provides for the production of an eye-witness to establish the accident in case the insured comes to his death by fire-arms, and etc. The validity of that clause under the facts of this case is to be determined in the event that the assured accidentally met his death by the discharge of the gun which was found beside his body absent any question of suicide, intentional or by reason of insanity. On account of instructions given for plaintiff in relation to the question of suicide, to which question we will refer later, this judgment must be reversed.

The provision in the petition which is assailed charged that said Elisha M. Rollins, while said insurance

was in full force, received through external, violent and accidental means, injured and killed by the top of his head being severed from the discharge of a double-barrel shotgun, from the effect of which the said Elisha M. Rollins on said date died, and that the said gun was discharged by him "with the intent to commit suicide, or that it was accidentally or inadvertently discharged by said deceased, Elisha M. Rollins, or some other person or means, the fact and real cause being unknown to this plaintiff herein, it being one or the other, exactly which she is unable to state." We have put in quotations the averments complained of by the defendant, and agree with the appellant that it is a charge in the alternative, one branch of which would entitle plaintiff to recover the full amount of the accidental death policy the other wing, that is the intentional suicide charge, would deny her a right of recovery on an accidental insurance policy. [Scales v. Insurance Company, 212 S. W. 8; Brunswick v. Standard Accident Insurance Company, 213 S. W. 45.]. The charge that the deceased committed suicide was undoubtedly put into this petition following the erroneous holding in Applegate v. Insurance Company, 153 Mo. App. 63, 132 S. W. 2, since overruled in Scales v. Insurance Company, 212 S. W. 8, and Brunswick v. Insurance Company, 213 S. W. 45. The policy in this case makes liability for accidental death $5000, and exempts liability for suicide while sane. Such alternative pleas have been held bad. [See Drolshagen v. Railroad, 186 Mo. 258, 85 S. W. 344; Behen v. Transit Company, 186 Mo. 430, 85 S. W. 346.] On a retrial, which there must be in this case, the plaintiff should amend her petition in this regard if she so desires.

As we read this provision if the assured met his death by accident and the plaintiff produced the proof required, under the law she should be entitled to recover on an accidental life insurance policy for the full amount thereof. If on the other hand it be found that the assured came to his death by reason of intentional

suicide, then plaintiff would recover nothing. Instructions given on behalf of plaintiff permitting a recovery for the full amount of this policy, and declaring that even though it be found that the deceased met his death by intentional suicide, it was yet an accident, were clearly erroneous. [Brunswick v. Standard Accident Insurance Co., 213 S. W. 45; Rollins v. Insurance Company, 213 S. W. 52; Scales v. Insurance Company, 212 S. W. 8.]

As set out in the opinion in this same case (213 S. W. 52) there is no question of suicide while insane in this case, and as held there in determining the questions which arise in this case, the suicide section of the statute (sec. 6945, R. S. 1909), is in no way involved. This must be borne in mind in dealing with the next question which we are to consider, that is, the provision in the policy providing for an eyewitness, for if there had been raised the question of the deceased coming to his death by his own hand while insane, then the determination of the validity of Clause 15 of the policy as to the eyewitness might raise a different proposition, because it might be then found that Clause 15 under those facts would evade the suicide statute and for that reason be held as invalid. [Iowa State Traveling Men's Ass'n v. Ruge, 242 Fed. l. c. 768.] But the insanity question, as before stated, being out of the case, we have only to deal with that provision of the policy requiring an eyewitness where the death was by firearms which were discharged from a purely accidental cause. We are, therefore, brought to decide whether section 15 of the policy is an invalid provision and void because it is an attempt to so change the rules of evidence that it defeats the cause of action, and is an unreasonable provision in that it attempts to unreasonably interfere with the procedure of courts in administering the law. In deciding this question, we find a case where there is ample evidence from which a jury would be justified in concluding that the deceased came to his death while sane from a purely accidental cause, that is from the

gun having been accidentally discharged and killing him while he was upon a ladder getting it from the top of a case. Under these circumstances, can the defendant defeat a full recovery on this policy because perchance the plaintiff is unable to produce an eyewitness to that accidental discharge? Section 15 of the policy reads: "If the insured receives bodily injuries, fatal or otherwise, from the discharge of firearms . . . the claimant shall establish the accidental character of the injury by the testimony of at least one eyewitness to the accident other than the insured himself, and in the event of failure so to do . . . the liability of the association shall be limited to one-tenth of the amount otherwise payable." If this is a valid provision of an accident life insurance policy, under these facts the plaintiff's full recovery could be but $500. If, on the other hand, it is an invalid provision of the contract, and the trier of the fact should find from competent evidence that the discharge of the gun was purely accidental, resulting in assured's death, then plaintiff would be entitled to $5000.

Our investigation of the law, as well as the investigation of counsel discloses that this is a new question in the State of Missouri, and that it is a question which has arisen in the United States in comparatively few cases, and our investigations reveal but one case where the identical provision has been passed on as to its validity under circumstances similar to those in this case, and there the Supreme Court of Iowa upheld the validity of the stipulation. [See Roeh v. Business Men's Protection Ass'n of Des Moines, 164 Ia., 199, 145 N. W. 479.] That case cites as an authority National Ass'n v. Ralstin, 101 Ill. App. 192. On examining the latter case, we fail to see where it is an authority on the validity of this provision, because the court held that the plaintiff there had made a good case even under the provision. It was a case where the plaintiff was merely injured, and that court held that he being an eyewitness to the tragedy was sufficient. That provision

did not provide that the eyewitness must be someone other than the injured himself. The validity of the clause was not discussed or passed on by that court. There is also cited in the Roeh case the case of Kelley v. Supreme Council, 61 N. Y. Supp. 394. In that case the New York court held that a stipulation avoiding the rule of evidence or presumption that one is dead after seven years of disappearance and absence, was a valid provision of the contract.

Counsel for appellant also cite the case of Connell v. Iowa State Traveling Men's A'ss'n, 139 Ia., 444, 116 N. W. 820. On examining this case, we find that the provision in the contract of insurance differs somewhat from the one under consideration. It reads that the Association would not be liable "for any injury to a member whether resulting in death or otherwise, for an injury resulting from the discharge of firearms where there is no eyewitness to the discharge except the member himself." That court held that this was a provision avoiding liability in a particular event, that is death by firearms, in the absence of an eyewitness, and was similar to other conditions in the policy which exempted the insurer. The court also held that such fact must be shown under such a provision as a defense. The provision which we have heretofore quoted in the policy we are considering does not state a condition that existing will necessarily avoid or limit the liability of the insurer, but attempts to describe and require the character of evidence that the beneficiary must produce in order to show or prove the accidental character of the injury.

Appellant cites the case of Lundberg v. Interstate Business Men's Ass'n, 162 Wis. 474, 156 N. W. 482. The provision calling for an eyewitness is very similar to the one in the case at bar, and the Wisconsin court, following the Iowa court, held that the provision was valid. While this is an opinion which upholds appellant's contention that the clause under consideration is valid, it will be borne in mind in the Lundberg case the under the laws of

Wisconsin relating to insurance, insurers are required to submit their forms of policy to a State insurance official under the State law, and the policy there had been submitted and received the approval of such official. The court therefore, might have had more reason for upholding all the provisions of a contract under such State regulation than it would have where no such State regulation is in force.

In the case of Charles E. Lewis, Administrator, v. Brotherhood Accident Co., 194 Mass. 1, 79 N. E. 802, the court passed upon a case with a clause similar to the one at bar, but held that the evidence in that case showed that an eyewitness was produced, and in the conclusion of the opinion the court expressly states that it becomes unnecessary to consider the contention of the plaintiff that such a provision was void on the ground that it was an attempt to dictate to a court as to the rules of evidence. We see, therefore, that in that opinion the question that is before us was left open.

Appellant cites two Missouri cases: Williams v. Railroad, 112 Mo. 463, 20 S. W. 631, and Chapman v. Railroad, 114 Mo. 542, 21 S. W. 858. These are ordinary provisions relative to the determination of questions by a third party, or engineer, and are such contracts as are upheld by courts. They are, in a measure, arbitration agreements.

The case of Wilkerson v. Insurance Company, 63 Mo. App. 404, deals with a receipt being conclusive evidence. The real question that the court there decided was that this receipt was not intended to operate between the parties in that litigation, and in discussing that question it is conceded that it was not a contract opposed to public policy, and further stated that parties may contract *within limits* as to what may be evidence of certain facts. In that very case, however, where such receipt existed, under the terms of the policy providing that it would be conclusive evidence, the court did not permit it to operate as an estoppel against the plaintiff. While the language of this opinion is some authority for appel-

lant's contention here, we do not regard it as necessarily in conflict with a holding that pronounces the contract in the case at bar as invalid. In the case of Moses v. Association, 189 Ill. App. —, the condition was that there would be no liability when there was no eyewitness to the fatal discharge, thereby fixing a condition under which liability would or would not attach. It is not a provision attempting to dictate the character of evidence which must be used in court to establish liability.

We have attempted to discuss and analyze all the authorities cited by appellant, and with all due respect to the learned Supreme Court of Iowa in the Roeh case, and the learned Supreme Court of Wisconsin in the Lundberg case, we find ourselves unable to agree with the conclusions there reached relative to the validity of such a stipulation, and are convinced that the better reasoning and the great weight of authority denounces the stipulation under consideration as invalid, because it attempts to unreasonably invade the rules of court. It is an unreasonable interference with judicial procedure, and it entirely takes away from litigants the right to have their questions determined according to the established practice and rules of evidence that are in force and determine the controversies of litigants in the courts of our land. Common experience has taught that the best method of arriving at a conclusion in civil cases is to permit the triers of facts to take all of the facts and circumstances in evidence, which includes direct and positive, circumstantial and real evidence, and from such facts, circumstances and evidence arrive at the result which seems most reasonable and inferable. Contracts which attempt to wholly defeat this system of jurisprudence are void and invalid because they do encroach upon the rules of evidence that govern the litigation of the land as it is ordinarily conducted, and if permitted indiscriminately, would lead to absurd and impossible results. A ground upon which such contracts should be condemned is that they are unreasonable contracts. If, perchance, the insurer could require an eyewitness, why, then, could he not

demand an eyewitness with red hair, and if perchance that did not give him the protection that he thought was necessary, he could go farther and demand an eyewitness with red hair, on a white horse, all of which goes to show that such a provision would be utterly unreasonable. Let it be granted that the requirement merely of an eyewitness would not be as unreasonable as the one with red hair, on the white horse, it is none the less to a certain extent unreasonable in that it differs from what human experience has found to be reasonable evidence necessary to establish a given fact. "Courts guard with jealous eye any contractual innovations upon their jurisdiction." [First National Bank of K. C. v. White, 220 Mo. l. c. 736, 120 S. W. 36.]

The provision we are discussing is not one attempting to fix a condition under which the insurer will become liable for a certain amount or for no amount, but is attempting to fix the amount of evidence or the character of evidence which must be shown before such a condition can be pronounced as having existed. It attempts to fix the source from which this evidence shall come. It does not undertake to insure a man in any amount who is killed by a firearm in the absence of an eyewitness, but on the other hand does undertake to insure the life of a man who is accidentally killed by firearm for $500 provided it can be shown on the trial of a cause in court that the accidental character of the death is shown by an eyewitness. To prove a given fact by an eyewitness is requiring direct and positive proof. It is doing even more than requiring direct and positive proof, because it limits the direct and positive proof to that of an eyewitness—to a witness who has seen with his eyes. It has been held repeatedly that direct evidence is where a witness testifies directly of his own knowledge of the main fact or facts to be proven; that a fact may be proven either by circumstantial evidence as well as by the direct testimony of eyewitnesses. [State v. Avery, 113 Mo. l. c. 494, 21 S. W. 193; State v. Tate, 156 Mo. 119, 56 S. W. 1099.] Direct evidence is proof of facts by witnesses

who saw the acts done or heard the words spoken. [Buckler v. Kneezell (Texas), 91 S. W. 367; Knickerbocker v. Worthington, 136 Mich. 224, 101 N. W. 540.] It is said by the Supreme Court of North Carolina, in State v. Murray, 51 S. E. 1. c. 795: "The testimony of those witnesses who swore positively that they saw the pistol in the hands of the prisoner, and that he fired the fatal shot while the pistol was in his hand, is what the law terms positive testimony."

In Bouviers Institute, it is said: "Evidence is direct and positive when the very facts in dispute are communicated by those who have the actual knowledge of them by means of their senses." [See Pease v. Smith, 61 N. Y. 1. c. 484-485.]

As to what direct and positive evidence is, see 1 Jones on Evidence, section 6, page 29; see, also, 3 Words & Phrases (First Ed.), page 2072; Vol. 6, pp. 54-61; Second Ed., Vol. 2, page 48.

We call attention to these definitions of direct and positive testimony, showing that it is the evidence of those who have acquired a knowledge through the senses, because in the cases which we will hereafter discuss the courts condemn provisions and stipulations which require direct and positive or direct and affirmative evidence to establish the accidental character of the injury, and we reason that if the courts would declare as invalid a provision of a policy requiring direct and positive testimony, there is good ground to condemn the provision in this policy, which really limits the character of evidence more than a provision requiring direct and positive evidence, because it limits it merely to one class of direct and positive evidence and that is to the witness who has actually seen with his eyes.

The first case that we have found dealing with this question in this country is that of Utter v. Travelers Insurance Co., 65 Mich. 545, 8 Amer. State Rep. 913. In that case it was held that a clause in a policy of accident insurance requiring "direct and positive proof" that the

death of the assured was caused by external, violent and accidental means, and etc., cannot be allowed to prevail as a rule of evidence on the trial of an action against the insured, and it was held that courts will not permit the course of justice, upon a trial before them, to be stipulated or contracted in such manner as to defeat the ends to be subserved by such trial. The note of the reporter in the 8 Amer. State Rep., gives a number of cases sustaining this view, one of which is Travelers Insurance Company v. McConkey, 127 U. S. 661, 32 Law Ed. 308, and it was there held that the condition in that policy that direct and positive proof must be made that death was caused by external, violent and accidental means did not deprive the plaintiff, when making such proof, of the benefit of the rules of law established for the guidance of courts and juries in the investigation and determination of facts. This case clearly condemns stipulations in insurance policies, such as we are dealing with.

In dealing with a similar question to this, Chief Justice SHAW, in the case of Nute v. Insurance Company, 72 Mass. (6th Gray) 174, condemns contracts where the parties agree as to who will be witnesses, and gives as one reason for holding such provisions invalid, that it would be great inconvenience to require courts and juries to apply different rules of law to different cases in the conduct of suits in matters relating merely to the remedy according to the stipulations of parties in framing and diversifying their contracts in regard to remedies.

In 6 R. C. L., under Contracts, sec. 161, pp. 754, 755, it is declared that "courts will not permit the course of justice, upon trial before them, to be contracted about in such manner as to defeat the ends to be subserved by such trials."

The note in 9 Amer. & Eng. Anno. Cases, page 920, gives a number of cases condemning such provisions in insurance contracts.

There is a note in 37 Amer. & Eng. Anno. Cases, 915-c, page 817, following a report of the Roeh case.

This note, however, adds no additional authorities than hertofore dicussed for the ruling in the Roeh case.

In the case of Travelers Insurance Company v. Sheppard, 12 S. E. 18, the Supreme Court of Georgia condemns a provision requiring "direct and affirmative proof." The court there said: "In this case there is no hearsay, but it is true that injury and death are not established by direct and affirmative proof without the aid of inference. It was probably the design of the company in framing the provisions to exact preliminary proof in which inference should have no share, but if so, countenance cannot be given by the courts to such an attempt to vary the ordinary rules of evidence." [See, also, Jenkin v. Life Insurance Company, by the Supreme Court of California, reported in 63 Pac. 180.]

It is held in the case of Reynolds v. Equitable Accident Ass'n, 1 N. Y. Suppl. 738, that a requirement in a life insurance policy that evidence of the injury occasioning the death shall be "direct and affirmative" is in effectual, to change the rules of evidence. To the same effect will be found the holding in Preferred Accident Insurance Co. v. Barker, 93 Fed. 158.

In cases ordinarily upholding stipulations which are conditions precedent, the condition exacted is one which the party bound could have at some time fulfilled or complied with, that is it was possible to have complied with the condition laid down, but this provision is in effect a forfeiture clause. If the death was the result of accident, it was a matter over which the insured had no control and one in which he could not have present the required evidence, and the provision was one which made it absolutely impossible for plaintiff to fulfill because there was no such evidence or person in existence. The provision in the policy does not, as before stated, deny a liability for accidents resulting from fire arms, but on the other hand it makes a liability for accidents resulting from firearms and then attempts to provide what evidence will be necessary to establish the accidental character.

The courts with apparent unanimity, in dealing with the provision of this insrance policy, declare that it was intended to limit suicide, or to limit liability where there may have been suicide with no witnesses. If this is the purpose of that provision then that purpose has entirely failed in a case such as we are dealing with because, if it was an intentional suicide, then no recovery can be had on it because of an accident, and leaving out of consideration the effect the Missouri suicide statute has on insane suicide, it is useless as a precaution against insane suicide here, because that is admittedly out of the case.

We have noticed in the case of Goodes v. Order of United Commercial Travelers, 174 Mo. App. l. c. 348, 156 S. W. 995, where the St. Louis Court of Appeals was dealing with a question involving a requirement of external or visible evidences of accident or marks on the body of the deceased. Several cases are cited. There, to be noticed, the court was not passing upon the validity of such a provision, and by reading that case and cases cited, it would appear that the Association was limiting its liability not to extend to those cases. Insurance was not written in the policies on accidents absent these marks on the body (they were not cases where they insured if marks were on the body provided plaintiff must show that the marks were on the body by certain kind of evidence). They are similar to the Iowa case of Connell v. Iowa State Traveling Men's Ass'n, 116 N. Wl. 820. In our case, however, the policy does provide for the payment of an accident by discharge of firearms.; in any event, it agrees to pay one-tenth of the policy for such an accident, and after contracting to pay for an accidental death by firearms, in the provision it is attempted, in order to recover the full amount of the policy, to designate what character of evidence the plaintiff must produce to show that it was an accidental death. In the one event, as under the cases last above cited, there is no liability whatever under certain conditions, while in our case there is

liability provided the plaintiff conforms to a rule of evidence set up by the company rather than the rules of evidence of our courts.

In passing on the validity of a contract of insurance, stipulating that the death under the policy would not be presumed on account of disappearance and absence, the common law or statutory presumption, or rule of evidence, as some of the courts put it, the authorities are not in accord. While we do not hold that the question there is entirely analogous to the one here, the following courts have held such provisions as void: Somberg v. Maccabees, 158 Mich. 568, 123 N. W. 25; Hannon v. Grand Lodge, 163 Pac. 169; K. of P. v. Wilson, 204 S. W. 891; W. O. W. v. Robinson, 187 S. W. (Texas) 215; Mystic Circle v. Haskins, 171 S. W. (Texas) 812; Caffney v. Royal Neighbors, 174 Pac. (Idaho) 1014; Reynolds v. North American Union, 204 Ill. App. 316. In these cases we note that in addition to the provisions being held invalid, in that they undertake to fix rules of evidence for the courts, there is the additional reason, in some of them at least, that the by-laws in fraternal insurance were passed after the certificate was issued, and it was for that reason an unreasonable stipulation. Such stipulations as last referred to have been held valid in the following cases: Kelley v. Supreme Council, 61 N. Y. Suppl. 394; Porter v. Home Friendly Society, 41 S. E. 45; McGovern v. Brotherhood of L. F., 98 N. E. 1128.

We do not hold that parties may not contract as to rules of evidence in a limited way, but do hold that stipulations are void where they by their terms defeat the cause of action entirely on account of a provision therein demanding impossible evidence to establish a fact which can be established in the courts under the well recognized and used rules. We understand it was this principle which caused the court to use the following language in the case of Stevens v. Fire Insurance Company, 120 Mo. App. l. c. 104, 96 S. W. 684: "While the law is abundantly well established that stipulations

in contracts providing for the submission of matters pertaining to a contemplated controversy, that is, the right of action itself, and all matters incident thereto, to arbitration, are void as against public policy as tending to oust the courts of their rightful jurisdiction."

Being of the opinion that both reason and authority dictate that such provisions in policies as we have here must be held invalid, because they undertake to set up rules of evidence for the courts which by their terms oust the jurisdiction and defeat the cause of action, and because they are unreasonable and interfere with judicial procedure, we hold that the provision in the contract under consideration is invalid and void, and that the plaintiff will have fulfilled all that the law requires under this policy when she produces evidence from which it can reasonably be found that her husband came to an accidental death caused by the discharge of the gun, and that such evidence is sufficient to establish the accidental character of the death. The case on retrial should, therefore, be submitted to the jury on instructions so framed that if the jury find that the death of the insured was caused by a voluntary intentional sane suicide, their verdict should be for the defendant; but on the other hand, if from all the facts and circumstances should the jury find that the deceased came to his untimely end as a result of an accident, then the verdict should be for the full amount of the policy.

The instructions permitting a full recovery in case of intentional suicide were doubtless drawn before the case of Applegate v. Travelers' Insurance Company, 153 Mo. App. 63, 132 S. W. 2, was overruled by the Supreme Court in the Scales and Brunswick cases.

As before stated, the uncertain conditions in which the law was governing the questions which were tried in the lower court on this policy, make it apparent that there is no room for recovery by way of penalties and attorney fees, and they should be eliminated from the case.

The judgment is reversed and the cause remanded for a new trial, to be had in accordance with the views herein expressed.

*Sturgis, P. J.,* concurs in result. *Bradley, J.,* concurs.