WERTHEIMER v. TRAVELERS' PROTEC-
TIVE ASS'N OF AMERICA.
No. 715.

Circuit Court of Appeals, Tenth Circuit.
March 28, 1933.

J. D. Skeen, of Salt Lake City, Utah (E.
J. Skeen, of Salt Lake City, Utah, on the
brief), for appellant.

Paul H. Ray, of Salt Lake City, Utah
(Emmett M. Bagley and Robert L. Judd,
both of Salt Lake City, Utah, on the brief),
for appellee.

Before LEWIS, PHILLIPS, and Mc-
DERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

On the evening of June 20, 1930, the
body of David L. Wertheimer was discovered
in the weeds back of an apartment house in
Salt Lake City. He had been dead about
12 hours. There was a bullet wound in his
chest, and a revolver which had been seen
in his possession, with one shell discharged,
was found near by. No one saw the killing,
as far as the record shows, although neigh-
bors heard some one talking loudly about
dawn, and shortly thereafter a shot was
heard.

The deceased was a member of the ap-
pellee, a fraternal benefit society organized
under the laws of Missouri. Appellant fur-
nished proofs of death, in which she stated
that she was without personal knowledge as
to the circumstances of his death, other than
that his body was found as above narrated.
She said, "As far as I know there was no eye-
witness." The physician's certificate, a part
of the proofs, stated the cause of death to
be suicide. Such proofs are competent, al-
though not conclusive, evidence of the facts
stated therein. Mutual Ben. L. Insurance
Company v. Newton, 22 Wall. 32, 22 L. Ed.
793; Travelers' Ins. Co. v. Melick (C. C. A.
8) 65 F. 178, 187, 27 L. R. A. 629; Union
Mut. Life Ins. Co. v. Payne (C. C. A. 5)
105 F. 172; Cooley on Insurance (2d Ed.)
p. 5928.

The society declined to pay the loss, and
this action to recover the proceeds of the
certificate followed. Appellant alleged that
the insured came to his death "independently
of all other causes, through external, violent
and accidental means." In defense, the ap-
pellee set up the following clause of its con-

stitution and by-laws, which are incorporated in the certificate of membership by reference: "This association shall not be liable * * * for intentional injuries or acts causing death, loss of either hand, foot, arm, leg, sight of either eye, or disability inflicted by the member or any other person upon him while sane or insane or when the member dies as the result of injuries sustained as a result of a gunshot wound or the alleged accidental discharge of firearms when there is no eye witness except the member himself, suicide, by the member sane or insane."

The answer alleged that its certificate did not cover the loss sued on, for as much as the member died (1) as a result of a gunshot wound when no eyewitness was present; (2) as a result of self-inflicted intentional injuries while sane or insane; (3) as a result of a murder, if he was murdered; and (4) as a result of suicide by the member, sane or insane. In reply it is alleged that the "eyewitness" clause has been held to be unenforceable by the courts of Missouri, the state of appellee's organization.

The evidence disclosed the facts narrated. Both parties moved for a directed verdict without reservation. The trial court directed a verdict for the appellee. The correctness of that ruling is challenged by this appeal.

The clause in question falls far short of that clarity of expression which should characterize exemptions from a fixed liability. It would appear that in an effort to restrict the coverage, suicide is excepted by two separate clauses in the same sentence; that murder is also excepted, as are all other gunshot wounds where no one witnesses the accident. We are, fortunately, not called upon to interpret the entire clause with precision, for that part of the clause relied upon by the trial court is clear. The association is not liable if "the member dies as the result of injuries sustained as a result of a gunshot wound or the alleged accidental discharge of firearms when there is no eyewitness except the member himself." ·

■ If this is a valid limitation upon the liability of appellee, the trial court's decision on the facts cannot be disturbed on this record. No reason is apparent why parties competent to contract may not, if they desire, exclude all deaths from gunshot wounds from the risks assumed; a fortiori, they may restrict the coverage to such wounds as may be inflicted in the presence of an eyewitness. Doubtless the clause was intended as additional protection against self-inflicted injuries; but whatever its purpose, its language is not obscure, and it is an essential part of the contract sued on. "Eyewitness" clauses have been before the courts, and their validity has generally been sustained. Becker v. Interstate Business Men's Acc. Ass'n (C. C. A. 8) 265 F. 508; Werner v. Travelers' Protective Ass'n (C. C. A. 5) 37 F. (2d) 96; Roeh v. Business Men's Ass'n, 164 Iowa, 199, 145 N. W. 479, 51 L. R. A. (N. S.) 221, Ann. Cas. 1915C, 813; Moses v. Ill. Comm. Men's Ass'n, 189 Ill. App. 440; Schumacher v. National Travelers' Ben. Ass'n, 118 Kan. 523, 235 P. 844; Southern Travelers' Ass'n v. Shattuck (Tex. Civ. App.) 2 S.W.(2d) 568; Lundberg v. Interstate Bus. Men's Ass'n, 162 Wis. 474, 156 N. W. 482, Ann. Cas. 1916D, 667. For other cases, see Annotation, 62 A. L. R. 39. Opposed, Rollins v. Business Men's Acc. Ass'n, 204 Mo. App. 679, 220 S. W. 1022, 1024. Cf. Utter v. Travelers' Ins. Co., 65 Mich. 545, 32 N. W. 812, 8 Am. St. Rep. 913, which deals with a "direct and positive proof" clause. There is no Utah decision holding that such provision conflicts with the public policy of that state.

Appellant's chief reliance is upon the proposition that since this certificate was issued by a fraternal order organized under the laws of Missouri, all other courts are bound by the decisions of the Missouri courts in any litigation between the association and its members; and that an intermediate court in Missouri held, in the Rollins Case, supra, that a clause similar to the one here involved was an unwarranted interference with judicial proceedings. It has been authoritatively held that the construction given to the charter and constitution of a fraternal order by the courts of the state of its creation, is binding upon the courts of other states. Supreme Council of Royal Arcanum v. Green, 237 U. S. 531, 35 S. Ct. 724, 59 L. Ed. 1089, L. R. A. 1916A, 771. The obligations of its members to pay dues and assessments must be uniform, else there is a discrimination among its members, and the structure becomes one thing in one state and another in another. Upon the authority of the Green Case, it was held that the courts of another state could not strike down a by-law which the courts of the state of its creation had sustained. Modern Woodmen v. Mixer, 267 U. S. 544, 45 S. Ct. 389, 69 L. Ed. 783, 41 A. L. R. 1384. But it has not yet been held, even in cases involving fraternal societies, that the courts of one state may determine the public policy of another state as to the evidence to be received in its courts. We do not need to decide whether the rationale of the Green Case requires that

such additional step with its far-reaching connotations, be taken.[1]

We need not decide the question, because the Rollins Case is not in point. The provision before the court in that case was directed at the method of proof, the clause reading "the claimant shall establish the accidental character of the injury by the testimony of at least one eyewitness." The provision in the case at bar concerns itself with the kind of accident covered by the policy, and makes no attempt to limit the proof thereof. It exempts from the coverage accidents from firearms where no eyewitness is present. The Rollins Case itself recognizes the distinction, and intimates that a clause like the one under consideration would not fall under the ban. The court there said, in distinguishing the case of Moses v. Ill. Comm. Men's Ass'n, supra, that: "The condition was that there would be no liability when there was no eyewitness to the fatal discharge, thereby fixing a condition under which liability would or would not attach. It is not a provision attempting to dictate the character of evidence which must be used in court to establish liability." Rollins v. Business Men's Acc. Ass'n, 204 Mo. App. 679, 220 S. W. 1022, 1025.

The distinction may be of little practical importance, although cases might well arise where proof could be made that an eyewitness was present, where the eyewitness himself had died or disappeared. But the difference in the two clauses leaves the one here involved entirely outside of the reasoning of the Missouri case. It may also be noted that the

Missouri decision is by one of the intermediate courts of appeal of that state, and not by its Supreme Court.

Appellant then argues, with commendable diffidence, that there is no support in the record for Judge Johnson's finding that there was no eyewitness to the accident. We are in entire accord with the rule laid down in Lewis v. Brotherhood Acc. Co., 194 Mass. 1, 79 N. E. 802, 17 L. R. A. (N. S.) 714, and Pride v. Inter-State Business Men's Acc. Ass'n, 207 Iowa, 167, 216 N. W. 62, 62 A. L. R. 31, that in applying the clause there must be a liberal interpretation of the word "eyewitness." There need not be proof, to comply with the clause, that the human eye followed the bullet in its course, or observed the act of pulling the trigger; if that was the intention of the association, it should have directly excluded deaths from gunshot wounds from the risks assumed. The clause should be given a rational meaning; it is therefore sufficient if, from all the facts and circumstances, the trier of the facts may conclude that the accident did not occur in the solitude sought by suicides, but that it did occur, as is often the case in accidents, when a third person was in position to observe the general circumstances surrounding the untoward event. But even under such liberal application, the appellant cannot prevail. The only evidence is that a neighbor heard loud talking and footsteps "just below" the sleeping porch; that some time after, a shot was heard that "sounded so near, we thought it was in the house"; that twelve hours later, the body was found 147 feet away. Inference must be built upon inference to get from this evidence to the conclusion that some one else was present when the fatal shot was fired. On the other hand, appellant in her own proof of loss, stated there was no eyewitness so far as she knew; and she tendered a statement of the physician that the cause of death was suicide. No effort was made to explain, impeach, or contradict these statements submitted to appellee; their truth was vouched for by appellant, and appellee was invited to rely thereon. Conceding without deciding that the burden is upon appellee to show that the clause was breached, there is abundant evidence to sustain the trial court's finding that there was no eyewitness to the tragedy.

Other points urged in support of the judgment need not be considered. The judgment is affirmed.

[1] This precise point was considered and decided, in a case concerning the eyewitness clause, by the Eighth Circuit Court of Appeals, in Becker v. Inter-state Bus. Men's Acc. Ass'n, 265 F. 508, 510. In an opinion by Judge Munger, concurred in by Judges Sanborn and Stone, it was held: "It is said to be against public policy, because it undertakes, by a contract between the parties, to define the evidence that may be used in an action on the certificate; that the courts may not be controlled in deciding what is legal evidence of death by a contract that only proof by an eyewitness shall be competent. It is the public policy in force in Kansas, where this action was brought, which is to be sought (The Kensington, 183 U. S. 263, 269, 270, 22 S. Ct. 102, 46 L. Ed. 190; Kennett v. Chambers, 14 How. 38, 52, 14 L. Ed. 316; Swann v. Swann (C. C.) 21 F. 299, 300; The Guildhall (D. C.) 58 F. 796, 799; Parker v. Moore, 115 F. 799, 802, 53 C. C. A. 369; Grosman v. Union Trust Co., 228 F. 610, 612, 143 C. C. A. 132, Ann. Cas. 1917B, 613; Story on Conflict of Laws, § 244; 12 Corp. Jur. 439); and this public policy, if not controlled by the Constitution, treaties, or laws of the United States, or by the principles of the commercial or mercantile law or of general jurisprudence, is governed by the laws of the state as disclosed by the constitution or statutes or by the decisions of its highest courts (Hartford Ins. Co. v. Chicago, Milwaukee & St. Paul Railway Co., 175 U. S. 91, 100, 20 S. Ct. 33, 44 L. Ed. 84)."