LUNDBERG, Appellant, vs. INTERSTATE BUSINESS MEN'S AC-
CIDENT ASSOCIATION, Respondent.

*February 3—February 22, 1916.*

*Insurance commissioner: Powers: Approval of policy forms: Collat-
eral attack: Stipulation that company was duly licensed: Pre-
sumption: Accident policy: Statutory requirements: Typog-
raphy: Expert testimony: Liability for gunshot wounds: Eye-
witness clause: Validity: Public policy: Who is "eye-witness."*

1. The insurance commissioner is vested with power to determine
   whether a form of policy submitted for his approval complies
   with all the statutory requirements (including those relating to
   its typography as well as those relating to its contents), and his
   decision that it does so comply cannot be collaterally attacked in
   an action upon such a policy by a beneficiary.
2. In such an action, therefore, expert testimony is inadmissible to
   show that in a policy of the form approved by the commissioner
   a certain provision was not printed in bold-face or prominent
   type as required by sub. 2, sec. 1960, Stats. 1913.
3. A stipulation upon the trial of an action upon an accident insur-
   ance policy that prior to the issuance of the policy the defendant
   company had been duly authorized to transact its appropriate
   business in Wisconsin, was equivalent to stipulating that de-
   fendant had filed its policy form with the insurance commis-
   sioner and that it had been approved by him as required by sec.
   1960, Stats. 1913, since it is not to be assumed or presumed, in
   the absence of proof, that a license would have been issued to de-
   fendant if it had failed to comply with the law.
4. The plaintiff in such an action was entitled to show that the pol-
   icy in suit was not of the form approved, or that no form had
   ever been submitted for approval; but the trial court having
   held in this case that the policy on its face showed that it com-
   plied with the statutes,—in which conclusion this court con-
   curs,—it is unnecessary to decide whether expert testimony of-
   fered by the plaintiff as to the typography of the policy would be
   sufficient to throw the burden on defendant of proving that there
   was no departure from the approved form.
5. A provision in an accident insurance policy to the effect that the
   company will not be liable at all for injuries resulting to the in-
   sured from the discharge of firearms unless the accidental char-
   acter of the injuries be established by the testimony of "an eye-
   witness to all of the circumstances of the casualty," is not void
   as against public policy.

6. One who saw the insured on a lake rowing towards a boat landing, afterwards heard a shot from the direction of the landing, and soon after went to the landing, where she found him dead, lying in the bottom of the boat, with his rifle between his legs, was not "an eye-witness to all of the circumstances of the casualty," within the meaning of an accident policy.

APPEAL from a judgment of the circuit court for Price county: G. N. RISJORD, Circuit Judge. *Affirmed.*

On August 5, 1914, one Charles Lundberg procured a $5,000 accident insurance policy from the defendant covering a period of one year from date. On the 18th of October following the insured died as a result of a gunshot wound. His widow, who is the beneficiary named in the policy, brings this action. The policy was attached to and made a part of the complaint. Such policy contained a provision to the effect that there should be no liability on the part of the company for the payment of any sum on account of bodily injury produced by the discharge of firearms, "unless the claimant shall establish the accidental character of the injury by the testimony of a person other than the member or the claimant, who was an eye-witness to all of the circumstances of the casualty." When the case was called for trial the complaint was amended by adding the following paragraph:

"That paragraph V of said policy, which provides that there shall be no liability on the part of the defendant association on account of bodily injury produced by the discharge of firearms, unless the claimant shall establish the accidental character of the injury by testimony of a person other than the member or the claimant, who was an eye-witness to all of the circumstances of the casualty, is illegal, void and a nullity for the reason that the insertion of said paragraph V in said policy is in violation of the provisions of subdiv. 2 of sec. 1960 of the Wisconsin Statutes of 1913 and contrary to public policy."

The following facts were stipulated on the trial:

"I. The defendant is a foreign insurance association, and prior to the issuance of the policy in this case it had been

duly authorized to transact its appropriate business within the state of Wisconsin.

"II. The original policy is identified and made a part of the evidence in this case.

"III. The decedent, as was his usual custom, on the day of the accident went to a small lake some four miles from his home for the purpose of hunting and fishing. He ate dinner at a farmer's house near the lake and went out on the lake. He was expected to return for supper. About 5:30 o'clock in the afternoon the housewife began preparations for the evening meal. For this purpose she went from the house to a milk house on the shore of the lake and some fifteen rods from the boat landing. As she went to the milk house she observed the deceased rowing towards the landing. While at the milk house she heard a shot of a gun from the direction of the landing and soon after went to the landing. She found the deceased lying in the bottom of the boat with his legs over the seat. She called to him once or twice, and as he did not answer she ran away. Soon after her husband came to the place and found the deceased lying in the bottom of the boat with his legs over the seat. He had fallen over backward from the boat seat, his rifle between his legs, the muzzle resting upon the front edge of the boat seat pointing in the direction he had fallen, and the deceased had a bullet hole through his body, the bullet having entered the breast. In the boat was fishing tackle and the disjointed fishing rod. No one saw the deceased at the time of the discharge of the gun, from the time he was seen rowing towards the landing till the woman reached the landing after she heard the shot. The rifle was found to be discharged, the hammer in contact with the firing pin, and the shell in the chamber. The discharge of said gun caused the injury and death.

"IV. The plaintiff further offers expert evidence to establish that the division specifying the excepted risks, being division 5 of the policy, was not printed in bold-face type.

"V. The defendant offers no evidence."

The offer of the plaintiff to show by the testimony of an expert witness that the provision of the policy referred to was not printed in bold-face type was rejected by the court as being incompetent. The court held that the provision of the

policy in dispute was not contrary to public policy and that the plaintiff's evidence did not meet the requirements of such provision.    Judgment was accordingly entered dismissing the complaint, from which judgment the plaintiff appeals.

*W. K. Parkinson,* for the appellant.

For the respondent there was a brief by *R. M. Haines,* general counsel, and *Dunshee & Haines* and *Barry & Barry,* attorneys, and oral argument by *R. M. Haines.*

BARNES, J.    Appellant argues that the court erred (1) in refusing to receive expert evidence tending to show that the eye-witness provision of the policy in question was not printed in bold-face type; (2) in holding that such provision was printed in bold-face type and with greater prominence than any other portion of the text of the policy; (3) in holding that the eye-witness clause was not contrary to public policy; and (4) in holding that the plaintiff's evidence was insufficient to meet the requirements of this clause.    In order to get our true bearings in the case it is necessary to refer to a number of statutory provisions that were in force when the policy was issued.

Sub. 1 of sec. 1960, Stats. 1913, reads:

"On and after the first day of January, 1914, no policy of insurance against loss or damage, from the sickness, or the bodily injury or death of the insured by accident shall be issued or delivered to any person in this state until a copy of the form thereof and of the classification of risks and the premium rates pertaining thereto have been filed with the commissioner of insurance; nor shall it be so issued or delivered until the expiration of thirty days after it has been so filed unless the said commissioner shall sooner give his written approval thereto.    If the said commissioner shall notify, in writing, the company, corporation, association, society or other insurer which has filed such form that it does not comply with the requirements of law, specifying the reasons for his opinion, it shall be unlawful thereafter for any such insurer to issue any policy in such form."

Sub. 2 of the same section, among other things, provides that no policy shall be issued or delivered

"unless the exceptions of the policy be printed with the same prominence as the benefits to which they apply, provided, however, that any portion of such policy which purports, by reason of the circumstances under which a loss is incurred, to reduce any indemnity promised therein to an amount less than that provided for the same loss occurring under ordinary circumstances, shall be printed in bold-face type and with greater prominence than any other portion of the text of the policy."

This subsection also provides for the style of type that must be used in printing certain portions of a policy. Sub. 3 contains a list of provisions which must be incorporated in an accident policy.

Sub. 14 of said sec. 1960 (p. 1486, Stats. 1913) provides:

"Any policy covered by this act, the form of which has received the approval of the commissioner of insurance may be issued or delivered in this state on and after the first day of October, 1913."

Sub. 13 of the same section provides:

"Any company, corporation, association, society or other insurer or any officer or agent thereof, which or who issues or delivers to any person in this state any policy in wilful violation of the provisions of this act shall be punished by a fine of not more than one hundred dollars for each offense, and the commissioner of insurance may revoke the license of any company, corporation, association, society or other insurer of another state or country, or of the agent thereof, which or who wilfully violates any provision of this act."

Sub. 9 of said sec. 1960 (p. 1486, Stats. 1913) reads:

"A policy issued in violation of this act shall be held valid but shall be construed as provided in this act and when any provision in such policy is in conflict with any provision of this act the rights, duties and obligations of the insurer, the policy-holder and the beneficiary shall be governed by the provisions of this act."

The statutes referred to required the respondent to submit its form of policy to the insurance commissioner. Such officer had thirty days in which to approve or disapprove of the form submitted. If no objection was made within that time, then the form *ipso facto* stood approved without further official action. During this interim it was declared to be unlawful to issue a policy. If the commissioner was dissatisfied with the form submitted, it was necessary to provide a form that would meet his approval. Until this was done a policy could not lawfully be issued, and for violation of the law the insurance company was not only subject to a fine but the commissioner might revoke its license to do business in the state. It is perfectly obvious that the provisions of law referred to required the commissioner to pass upon the typographical make-up of the policy as well as upon the reading matter therein contained. It is just as apparent that the legislature vested in the commissioner the power to determine a question of fact, to wit: Did the form submitted comply with the requirements of law? Whether or not there is any way in which to review such a decision is not before us, because we are entirely satisfied that it cannot be collaterally attacked in a suit under a policy by a beneficiary named therein. Where it is made unlawful to issue a policy in a form not approved by the commissioner, it would be an incongruity to say that after an approved form had been issued the insurer could not claim the benefits of provisions contained in the policy because forsooth some printer could be found who was willing to swear that the commissioner did not know what "bold-face" or "prominent" type was when he saw it. The office of insurance commissioner is an almighty important one. This fact has been judicially determined by this court. *Ekern v. McGovern,* 154 Wis. 157, 142 N. W. 595. It is not supposable that the legislature intended for a moment that his official determinations should be upset by the opinion of any and every person who was able to qualify as

an expert. It would be surprising if he himself would be able to prepare a form which some expert would not endeavor to pick to pieces.

It was stipulated in the case that prior to the issuance of the policy sued on the defendant had been duly authorized to transact its appropriate business in Wisconsin. This was equivalent to stipulating that the defendant had filed its policy form with the commissioner and that it had been approved by that officer. It is not to be assumed or presumed, in the absence of proof, that a license would have been issued to the defendant if it had failed to comply with this important provision of law.

Of course there is the very remote possibility that the defendant, after filing a satisfactory form of policy, proceeded to violate the law by issuing policies in a different form. The stipulation is incomplete, in that it fails to cover this contingency. The real question was whether the form of the policy in suit was a *facsimile* of the one that had been approved. An affirmative answer to this question would end the attack made on its form. But the plaintiff was entitled to show that the policy sued on was not of the form approved by the commissioner, or that no form had ever been submitted for approval. Whether evidence such as was offered here would be sufficient to throw the burden on the defendant of proving that there was no departure from the approved form, we do not find it necessary to decide. The trial court held that the policy on its face showed that it complied with the statute and refused to receive expert evidence to contradict this patent fact. This court concurs in the conclusion reached in this regard by the lower court.

It seems too plain to justify argument that on the facts stipulated the claimant failed to establish the accidental character of the injury by the testimony of "an eye-witness of all the circumstances of the casualty," as the policy required where death resulted from a gunshot wound.

Neither do we know of any rule of law which would justify the court in holding the provision of the policy in question void as being against public policy. It was obviously inserted to prevent recovery by the beneficiaries of suicides. Presumably the premium charged was fixed with reference to this limitation on liability. The insurance policy sued on is a matter of contract. We see no reason why the defendant might not have provided that it should not be liable at all for injuries resulting from gunshot wounds or poison. Appellant's counsel cite no authorities to sustain the contention made. The authorities dealing with the precise point before us are not numerous, but they sustain the decision of the trial court. *Connell v. Iowa State T. M. Asso.* 139 Iowa, 444, 116 N. W. 820; *Roeh v. Business Men's P. Asso.* 164 Iowa, 199, 145 N. W. 479, 37 Eng. & Am. Ann. Cas. 813; *Nat. Acc. Soc. v. Ralstin,* 101 Ill. App. 192. Many other decisions on kindred questions will be found in the opinion of the court in the *Roeh Case.* This court in common with many others has held that it is competent for parties to bind themselves by contract to a shorter period of limitation than that provided for by statute. *Hart v. Citizens' Ins. Co.* 86 Wis. 77, 56 N. W. 332; *Griem v. Fidelity & C. Co.* 99 Wis. 530, 75 N. W. 67. If this can be done, parties ought to be competent to agree that recovery could not be had for certain injuries except on condition that the accidental character thereof be established by an eye-witness.

*By the Court.*—Judgment affirmed.