SCHNICK, Respondent, vs. NATIONAL SURETY CORPORATION, Appellant.

*November 11—December 6, 1938.*

For the appellant there was a brief by *McConnell, Schweizer & Fuller* of La Crosse, and oral argument by *H. V. Fuller.*

For the respondent there was a brief by *John C. Franzini,* attorney, and *Schubert & Stevenson* of counsel, all of

La Crosse, and oral argument by *Mr. Franzini, Mr. A. H. Schubert* and *Mr. W. H. Stevenson.*

Rosenberry, C. J.  On December 13, 1936, the defendant issued its policy, whereby it agreed to indemnify the plaintiff to the extent of $800 for all loss or damage due to robbery, or attempt thereat, committed during the hours beginning at 7 a. m. and ending at 12 midnight, from the premises known as 1701 Onalaska avenue, La Crosse, Wisconsin. Among other things, the policy contained the following provisions:

"Robbery as used herein means:

"(a) Felonious and forcible taking of property by violence inflicted upon the custodian or custodians in the actual care and custody of the property at the time; or

"(b) Felonious and forcible taking of property by putting such custodian or custodians in fear of violence; or

"(c) Forcible taking of property by any other overt felonious act committed in the presence of such custodian or custodians and of which they were actually cognizant, provided such other act is not committed by an officer or employee of the assured, or

"(d) [Not material here.]

"Premises, means the interior of that portion of the building designated in Item 3 of the Declarations, occupied solely by the assured in conducting his business.

"Exclusions:

"The corporation shall not be liable for any loss or damage:

"(1) Unless the robbery is established by direct and affirmative evidence;

"(2) Unless the assured has taken all reasonable precautions to safeguard the property against loss by robbery."

Exclusions (3), (4), (5), and (6) not material here.

The policy was subsequently altered so as to cover the entire twenty-four hours.

There was no claim made that any physical violence was employed in taking the property from the premises of the plaintiff.

The plaintiff contends that an employee, one Robert Kalina, rendered the plaintiff unconscious by malicious injury, that is, by secretly causing the plaintiff to consume some drug which rendered the plaintiff unconscious, and that while the plaintiff was unconscious the property was taken. The jury found that on or about the 1st day of July, 1937, Kalina took $900 from the plaintiff's building; that Kalina did not use force against the plaintiff in taking the money, which was taken from the plaintiff or from his direct care and custody, and that at and immediately before this money was taken from the plaintiff by Robert Kalina, Kalina rendered the plaintiff unconscious by malicious injury, that is, the administration of drugs.

A substantial question as to whether the policy covered a loss caused by the administration of drugs, on the theory that rendering a person unconscious by that means amounts to constructive force, is presented by the record. We find it unnecessary, however, to determine that question in this case.

The facts, briefly stated, are as follows: The plaintiff operates a tavern in a two-story frame structure, with an open porch on the side. The west room of the building adjoins the porch and is occupied by the plaintiff principally as his living quarters. It adjoins the barroom, and at times customers are served there. On the day in question, plaintiff worked from about 6 o'clock in the morning until 10 at night. During the day Kalina had been in and about the premises. The plaintiff testifies that about 10 o'clock in the evening, Kalina suggested that the plaintiff take a drink of whiskey with him, and the plaintiff first declined but finally consented, and that a few minutes later Kalina suggested that they take another drink, to which plaintiff also consented; both drinks

being paid for by Kalina. The plaintiff served himself from a bottle on the back bar, and in doing so had to turn around. Shortly after taking the drinks, the plaintiff thought he smelled something like gas, and began sweating. After reading a few minutes, the plaintiff, feeling weak, went on the porch, sat down, and in about five minutes was gone, as he expresses it. It was about ten minutes to eleven when the plaintiff went on the porch, and he remembers nothing until he was awakened about 11:30 or 12 o'clock by one Esping. Upon being aroused the plaintiff discovered that Kalina had taken his clothes and left. The next morning he found that the money which he had hidden under a rug and in the stove was gone. The plaintiff notified the police the next morning, and on the following day notified the defendant's agent. The plaintiff also claims that he experienced some kind of an unusual feeling for about one week after the incident. He gave no history to the police indicating that he had been drugged, but told the police that Kalina had taken the money while he was out on the couch or davenport resting; that he went out on the porch because it was pretty hot, and he wanted to lie down. He made no claim to the agent that he had been drugged. So far as the record discloses, the claim that constructive force was used was first made when an amended complaint was served on the 19th day of March, 1938, some eight months after the robbery. Upon the trial medical testimony was introduced which was based entirely upon subjective symptoms testified to by the plaintiff. There is no evidence of the presence of any drug in the glasses or elsewhere, and no direct proof of the administration of drugs. No physician was called at the time of the robbery; no objective symptoms were observed by any one.

Assuming that the administration of a drug would amount to constructive force under the policy, a point not decided, it is considered that the evidence offered and received leaves the

matter in speculation and doubt. By the terms of the policy the loss is not covered unless it be established by direct and affirmative evidence. Such evidence is wholly wanting in this case. See *Lundberg v. Interstate B. M. Acc. Asso.* (1916) 162 Wis. 474, 480, 156 N. W. 482.

*By the Court.*—The judgment appealed from is reversed, and cause remanded with directions to dismiss the plaintiff's complaint.