STATE DEPARTMENT OF PUBLIC WELFARE, Appellant, v. LEMERE and others, Respondents.

*February 8—April 2, 1963.*

414

For the appellant there was a brief by *Charles C. Lubcke,* collection and deportation counsel, and *Clarence J. Simon* and *James R. Pleyte,* assistant counsel, and oral argument by *Mr. Lubcke.*

For the respondents there were briefs by *Davis, Soquet, Cherney & Ross* of Green Bay, and oral argument by *Colburn G. Cherney.*

FAIRCHILD, J. The department does not proceed upon the theory that it is a third-party beneficiary of the support agreement.[2]

The department contends that as an unpaid creditor of Mrs. LeMere it may, under secs. 312.16 and 312.17, Stats., reach the property conveyed to Gerald because he has failed to perform his agreement with her.

Gerald LeMere contends that because of the special type of claim asserted by the department, it is not entitled to proceed under secs. 312.16 and 312.17, Stats. This was the conclusion of the circuit court. Gerald further contends that the provision of the agreement for a conclusive presumption must be given full effect, extinguishing any unfulfilled obligation, and that there was no breach in any event because the agreement did not contemplate payment for hospital treatment of the mentally ill.

1. *Applicability of secs. 312.16 and 312.17, Stats.* These sections provide a remedy for creditors of a deceased, whose

[2] See *State Department of Public Welfare v. Schmidt* (1949), 255 Wis. 452, 39 N. W. (2d) 392, holding that the department could not recover as a third-party beneficiary under a similar agreement because it contained no express promise for its benefit.

claims have been allowed, but cannot be paid, "to reach and subject to sale any property, not included in such inventory, which is liable for the payment of such debts."

It has been assumed that the property deeded to Gerald could not have been reached by ordinary creditors, had there been any, because of sec. 237.025, Stats., exempting a homestead from claims, and that the state, as a creditor, could hope to reach it only because sec. 46.10 (2) expressly subjects a homestead to the type of claim being asserted. The circuit court correctly noted that the remedy of secs. 312.16 and 312.17 has ordinarily been considered and used in cases where property which could have been reached by all creditors has been conveyed in fraud of creditors,[3] and deemed it reasonable to hold the remedy unavailable to a creditor, such as the state, which has a special status. No such limitation, however, is expressed in the statute, reading in part, ". . . any creditor whose claim has been allowed may . . . bring an action," and, with great respect to Judge DUQUAINE, now retired, who heard this case, we differ from his conclusion that the limitation is implied. We conclude that the department may employ the statutory remedy if the property is liable for the payment of its claim, even though not liable for the payment of other claims.

2. *Was there a breach of the support agreement?* Presumably Gerald provided for his mother from February, 1953, to June, 1955. Her mental condition apparently required that she be cared for in state and county hospitals after that date. Gerald points out that he received property worth $7,000 and that his mother's life expectancy at the time of the conveyance was about twelve years. He contends that it is unreasonable to suppose that he was agreeing to

[3] See *German Bank v. Leyser* (1880), 50 Wis. 258, 265, 6 N. W. 809; *Allen v. McRae* (1895), 91 Wis. 226, 64 N. W. 889; *Richter v. Leiby* (1898), 99 Wis. 512, 75 N. W. 82; *Baldwin v. Frisbie* (1916), 163 Wis. 26, 157 N. W. 526.

assume the unusual burden of paying for care in a mental institution.

He agreed, however, to furnish "food, clothing, medical, hospital, and nursing expense." We find no expressed nor implied limitation to care made necessary by injury or physical illness. The fact that the burden might be heavier than the advantage he received is not persuasive, because that possibility is inherent in any agreement of this type.

We conclude that there was a substantial breach of the agreement, and that Mrs. LeMere had the right to rescind the conveyance during her lifetime.[4] The provision that this agreement be satisfied at her death showed, at least, that the parties did not intend that breach should result in an automatic reversion of title.

3. *Does such right of rescission descend to heirs or administrator for benefit of creditors?* Professor Eckhardt points out that this question has not been decided in this state.[5] A similar question arises where a grantor has a right to rescind for fraud, and dies without exercising it.

Sec. 331.01, Stats., provides for survival of equitable actions to set aside conveyances of real estate and to compel reconveyance thereof. Notwithstanding that provision, this court said in *Zartner v. Holzhauer:* [6]

"The right of rescission is one personal to the defrauded party, and no action or right of action to recover the possession of real estate or to set aside the conveyance of land arising in cases such as this exists until the person defrauded has exercised this right of rescission."

More recently, however, this court said: "We conclude that the statement in the *Holzhauer Case* was not necessary

---

[4] See Eckhardt, The Support Contract, 1951 Wisconsin Law Review, 581, 585.

[5] *Op. cit.,* p. 609.

[6] (1931), 204 Wis. 18, 24, 234 N. W. 508.

to its decision and that it was erroneous."[7]  Other courts have held that the grantor's cause of action to rescind a deed for breach of a covenant to support the grantor, survives the grantor.[8]  It is enforceable by the heirs, unless it is necessary for the administrator to enforce it in order to pay expenses, debts, or legacies.[9]

We conclude that Mrs. LeMere's right to rescind her deed survived her unless the provisions of the agreement for satisfaction of the obligation at her death compel a contrary result in this case.

4. *Did the agreement effectively terminate Mrs. LeMere's right of rescission at her death?*  The agreement provides that the mortgage in favor of Mrs. LeMere and the obligation to support her be deemed satisfied upon the death of Mrs. LeMere; and that her death give rise to a conclusive presumption that the obligation was performed.  A provision that one fact shall give rise to a *conclusive* presumption of a different fact is really substantive, and not evidentiary in nature.[10]

Thus the intention of the parties that any right of Mrs. LeMere to rescind the conveyance be extinguished upon her death is clear.  The question remaining is whether this arrangement contravenes public policy.

---

[7] *Glojek v. Glojek* (1948), 254 Wis. 109, 116, 35 N. W. (2d) 203.

[8] 1 Am. Jur., Abatement and Revival, p. 99, sec. 143.

[9] 9 Am Jur., Cancellation of Instruments, p. 357, sec. 10.  See Estate of Keske (1962), 18 Wis. (2d) 47, 50, 117 N. W. (2d) 575.

[10] "In strictness, there cannot be such a thing as a 'conclusive presumption.'  Wherever from one fact another is said to be conclusively presumed, in the sense that the opponent is absolutely precluded from showing by any evidence that the second fact does not exist, the rule is really providing that, where the first fact is shown to exist, the second fact's existence is wholly immaterial for the purpose of the proponent's case; and to provide this is to make a rule of substantive law, and not a rule apportioning the burden of persuading as to certain propositions or varying the duty of coming forward with evidence." 9 Wigmore, Evidence (3d ed.), p. 292, sec. 2492.

Public policy in this state permits parties to bind themselves by contract to a shorter period of limitation than that provided for by statute.[11] There would be no objection to a provision in the agreement before us limiting the enforcement of any rights arising upon breach to a reasonable period after the death of Mrs. LeMere. That type of provision, however, is not present.

Conveyances in return for an agreement to support are ordinarily made by elderly people. They are often infirm for a period before death, and it is not unusual for a grantor to become wholly incompetent. If the grantee does not provide support, it may be provided out of the grantor's remaining assets, if any, by his other relatives or heirs, or by the public. That which may have been intended for his heirs or legatees will be depleted, or bills may be incurred which cannot be paid. Where the grantor becomes mentally infirm and takes no action to enforce his rights, he cannot be said to have knowingly waived his rights. The greater certainty of title to property conveyed under support arrangements which would result from giving full effect to the provisions before us does not seem to warrant the prejudice to interests of others which would often result.

We therefore conclude that the provisions in question should not be given greater effect than to create a true presumption, rebuttable by clear and convincing proof.

The presumption has been rebutted, in this case, by the stipulated facts, showing that a substantial breach occurred. The department is entitled to subject the property to its claim.

*By the Court.*—Judgment reversed; cause remanded for entry of judgment consistent with the opinion on file herein.

CURRIE, J. (*concurring in part; dissenting in part*). I concur in all of the foregoing opinion, except as to part 4

---

[11] *Lundberg v. Interstate Business Men's Accident Asso.* (1916), 162 Wis. 474, 481, 156 N. W. 482.

thereof, and also concur in the result. Nevertheless, I disagree with part 4.

Professor August G. Eckhardt in his article, The Support Contract, 1951 Wisconsin Law Review, 581, 621, stated:

> "A title examiner could prudently approve title which set forth in the abstract a support contract containing a provision to the effect . . . that all remedies available to the promisee upon breach of the support contract would be terminated by the death of the promisee if there was also included a certificate evidencing the death of said promisee."

Nevertheless, part 4 of the majority opinion goes so far as to hold invalid any provision in the support contract which provides that as to any *bona fide* purchaser from the grantee (the obligor under the support agreement), after the filing of a death certificate showing the death of the original grantor whom such grantee agreed to support, such a death certificate creates a conclusive presumption that the support contract has been fully performed. Such a provision would not militate against the interests of the person to be supported because it would only be operative after that person's death. Neither would it work to the harm of diligent creditors of such person because a *bona fide* purchase of the land could not be made, after the filing of the death certificate, without the purchaser's paying fair value therefor to the obligor in whose hands such payment would be subject to the demands of his creditors. Therefore, I am firmly convinced that the majority opinion carries its invoking of public policy too far when it rules such a provision invalid.

There is a strong contravening reason of public policy for enforcing such a provision. Under applicable statutes of limitation, personal representatives, heirs, or creditors of the deceased person, whose support was the subject of the support contract, might have several years within which to institute legal proceedings against the land because of a

material breach of the support contract. Cf. secs. 330.34, 330.19 (9), 313.08, and 316.01, Stats. It seems to me that a conclusive-presumption provision limited to *bona fide* purchasers of the land, who buy after the filing of the death certificate, is in the public interest in protecting land titles and their marketability.

In the instant support agreement, the provision relating to the filing of the death certificate strongly suggests that the purpose of the conclusive-presumption provision was to protect future purchasers from Gerald. This is because as to Mrs. LeMere, and those claiming through her, such filing of the death certificate could serve no useful purpose. Therefore I would construe the conclusive-presumption provision as applicable only to *bona fide* purchasers of the land from Gerald after the filing of the death certificate. Another approach would be to hold such provision invalid as against the personal representatives and creditors of Mrs. LeMere, for the reasons of public policy stated in the majority opinion, but valid as to *bona fide* purchasers of the land from Gerald after the filing of the death certificate.

I am authorized to state that Mr. Justice DIETERICH joins in this opinion.